No. 20-56161

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**BRYANT FONSECA,**

*Plaintiff and Appellant,*

v.

**HEWLETT-PACKARD COMPANY, et al.,**

*Defendants and Appellees.*

On Appeal From The United States District Court
For The Southern District of California,
District Court Case No. 3:19-cv-01748-GPC-MSB
Hon. Gonzalo P. Curiel

# APPELLANT'S OPENING BRIEF

Martin N. Buchanan
Law Office of Martin N. Buchanan, APC
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 238-2426

Jeffrey L. Hogue
Tyler J. Belong
Hogue & Belong
170 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-4720

Attorneys for Appellant
Bryant Fonseca

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. Factual Allegations Relating to No-Poach Agreement. . . . . . . . . . . . . . . . 2
    B. Factual Allegations Relating to Fonseca. . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C. Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.     Reviewability and Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . 10

    II.    The District Court Erred by Dismissing the Sherman Act and
           Cartwright Act Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          A.    Fonseca Adequately Alleged the Existence of the No-
                  Poach Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          B.    The District Court's Analysis Was Faulty. . . . . . . . . . . . . . . . . . . 14

          C.    Fonseca Alleged Injury Sufficient to Confer Article III
                  and Anti-Trust Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    III.   The District Court Erred by Dismissing the Section 16600 Claim
           to the Extent it Was Based on the No-Poach Agreement. . . . . . . . . . . 20

    IV.   Assuming Any Deficiency in the Complaint, Fonseca Should be
           Granted Leave to Amend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

STATEMENT OF RELATED CASES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

# TABLE OF AUTHORITIES

## CASES

*Anderson News, L.L.C. v. American Media, Inc.,* 680 F.3d 162 (2d Cir. 2012). . . . . . . . . . . 17

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). . . . . . . . . . . . . . . 11, 12, 13, 14, 15, 16

*Blanton v. Domino's Pizza Franchising LLC,* 2019 WL 2247731 (N.D. Mich. May 24, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Butler v. Jimmy John's Franchise, LLC,* 331 F. Supp. 3d (S.D. Ill. 2018). . . . . . . . . . . . . . 19

*California's Cartwright Act. Kolling v. Dow Jones & Co.,* 137 Cal. App. 3d 709 (Cal. Ct. App. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cesnick v. Chrysler Corp.,* 490 F. Supp. 859 (M.D. Tenn. 1980). . . . . . . . . . . . . . . . . . . . 20

*Concha v. London,* 62 F.3d 1493 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Eichorn v. AT & T Corp.,* 248 F.3d 131 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Evergeen Partnering Group, Inc. v. Pactiv Corp.,* 720 F.3d 33 (1st Cir. 2013). . . . . . . . . . . . 16

*Hunter v. Booz Allen Hamilton, Inc.,* 418 F. Supp. 3d (S.D. Ohio 2019). . . . . . . . . . . . . . 19

*Law v. National Collegiate Athletic Ass'n,* 134 F.3d 1010 (10th Cir. 1998). . . . . . . . . . . . . . 20

*Lopez v. Smith,* 203 F.3d 1122 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*North County Community Alliance, Inc. v. Salazar,* 573 F.3d 738 (9th Cir. 2009). . . . . . . . . 10

*In re Online DVD-Rental Antitrust Litigation,* 779 F.3d 914 (9th Cir. 2015). . . . . . . . . . . . 17

*In re Papa John's Employee and Franchisee Employee Antitrust Litigation,* 2019 WL 5386484 (W.D. Ky. Oct. 21, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Roman v. Cessna Aircraft Co.,* 55 F.3d 542 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . 19, 20

*Soo Park v. Thompson,* 851 F.3d 910 (9th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Starr v. Baca,* 652 F.3d 1202 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Theme Promotions, Inc. v. News America Marketing FSI,* 546 F.3d 991 (9th Cir 2008). . . . . . 18

*Turner v. McDonald's USA, LLC,* 2020 WL 3044086 (N.D. Ill. Apr. 24, 2020). . . . . . . . . 19

**STATUTES**

15 U.S.C. § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7
28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
28 U.S.C. § 1292. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7
28 U.S.C. § 1332. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
29 U.S.C. § 1001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Cal. Bus. & Prof. Code § 16270. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6
Cal. Bus. & Prof. Code § 16600. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6
Cal. Bus. & Prof. Code § 17200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Cal. Gov't Code § 12900. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**RULES**

Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7
Fed. R. Civ. P. 54(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

## STATEMENT OF JURISDICTION

Count eight of the operative Third Amended Complaint alleges a federal claim under the Sherman Act, 15 U.S.C. § 1. ER-106-07. Thus, the district court had federal question jurisdiction. 28 U.S.C. § 1331. On August 11, 2019, the district court granted defendants' motion to dismiss counts five, six, and eight of the Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). ER-14-50. The other claims are stayed pending the disposition of a related action. ER-15:17-23. On October 21, 2020, the district court granted plaintiff's motion for immediate entry of judgment on counts five, six and eight pursuant to Fed. R. Civ. P. 54(b). ER-3-13. Plaintiffs filed a notice of appeal on November 4, 2020. ER-220-23. The appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(B). This Court has appellate jurisdiction under 28 U.S.C. § 1291 and Fed. R. Civ. P. 54(b).

Before briefing, appellees filed a motion to dismiss this appeal for lack of appellate jurisdiction, based on the district court's alleged non-compliance with Rule 54(b). Appellant opposed the motion. This Court denied the motion on February 16, 2021.

## ISSUES PRESENTED

1. Did plaintiff Bryant Fonseca adequately allege the existence of an unlawful "no-poach" agreement between his employer, Hewlett–Packard Company ("HP") and its competitor, 3D Systems, under which each agreed (1) not to solicit the other's employees, and (2) to dissuade its own employees from applying to the other

company?

2. Were Fonseca's allegations that the no-poach agreement caused his wages at HP to be suppressed, and also deterred him from applying for a higher-paying job at 3D Systems while he was an HP employee, sufficient to plead Article III and anti-trust standing?

3. Did the district court err by dismissing Fonseca's claims based on the no-poach agreement asserted under the Sherman Act, 15 U.S.C. § 1 et seq., California's Cartwright Act, Cal. Bus. & Prof. Code § 16270 et seq., and California Business & Professions Code § 16600.

## STATEMENT OF CASE

### A. Factual Allegations Relating to No-Poach Agreement

In 2016, HP expanded its three-dimensional (3D) printing operations. It made a substantial investment in this emerging technology, increasing its research and development budget for 3D printing. ER-69.

At the time, the 3D printing industry was highly competitive. HP and another entity called 3D Systems were two major competitors in the market. In order to remain competitive in this emerging marketplace, HP had to look for ways to minimize competition. ER-69.

Technology employees are frequently in high demand due to their specialized technology skills and ability. As HP began increasing its business in the 3D printing market, 3D Systems began aggressively poaching (i.e., hiring away) HP's talent,

2

starting with HP's top printing executives and working its way down through managers and other talent. ER-69-70.

In early 2016, 3D Systems hired HP's Executive Vice President of Imaging and Printing, Vyomesh Joshi, to be its new CEO. Joshi had previously worked for HP for 30 years. Almost immediately after starting as CEO of 3D Systems, Joshi began recruiting and hiring away other high-level HP employees for 3D System's management team. ER-69-70.

Soon after Joshi began poaching away top talent from HP, however, the executives of HP and 3D Systems entered into a "cease-fire" in the form of a no-poach agreement. Under the no-poach agreement, HP and 3D Systems each agreed to take necessary measures to refrain from soliciting the hiring of one another's employees and to dissuade their own employees from applying for work at the other company. ER-70-71.

On information and belief, this no-poach agreement was initiated by a phone call made to Joshi by Ron Coughlin, an HP executive who had recently had some of his top employees hired away by Joshi and 3D Systems. Coughlin called Joshi and told him to stop hiring away HP's employees. During this phone call, and subsequent communications between Joshi, Coughlin, and another top-level HP executive named Stephen Nigro, Joshi agreed to comply as long as the arrangement was mutual. The no poach agreement went into effect in approximately August 2016. ER-71-72.

Based on their no-poach agreement, 3D Systems and HP ceased cold-calling

each other's employees in or around 2016. They also ceased hiring each other's employees through third-party recruiting firms. And they began sharing pay scales with one another to assure they would not be in a bidding war to retain top talent. HP also took measures to discourage its employees from applying at 3D Systems, including by telling them they would immediately be terminated and would not receive severance benefits if they did so. HP took action against its own employees who violated these directives, including by terminating employees and escorting them from HP for interviewing with 3D Systems. ER-71-73.

Before the no-poach agreement, 3D Systems had been offering HP employees more compensation than what they were making at HP, but the agreement and sharing of pay scales assured that 3D Systems would cease doing so. Soon after the no-poach agreement went into effect, employees of 3D Systems began publicly complaining that they were no longer receiving competitive wages. ER-71-72.

Without the no-poach agreement, HP would have incurred additional costs to retain employees. HP wanted to avoid a bidding war so that it would not incur additional labor costs. ER-71-72. As a result of the no-poach agreement, Fonseca and other HP employees received less compensation than they otherwise would have. ER-71-72, 80, 97-98, 107.

### B. Factual Allegations Relating to Fonseca

Fonseca worked for HP for nearly 36 years at its San Diego site. For most of his career, he worked as a "Procurement Ops Associate V" in a work group that

conducted research and development on all-in-one printers. Over time, Fonseca's responsibilities increased dramatically. In August 2016, Fonseca began to work in the engineering support group. Fonseca received excellent performance reviews and numerous performance-related awards within his department. ER-56-57, 67.

After the no-poach agreement took effect in August 2016, HP managers told Fonseca and hundreds of other HP employees that they were required to immediately notify HP if they were offered a position with 3D Systems; that they would not receive severance benefits if they were offered a position with 3D Systems; that if they applied or talked to 3D Systems, they would immediately be terminated and would forfeit their severance benefits; and that HP employees had in fact been terminated and escorted out of HP for interviewing with 3D Systems. These actions deterred Fonseca and other HP employees from applying to 3D Systems. ER-72-74.

On May 8, 2017, Fonseca's manager notified him that his employment was being terminated under HP's Workforce Reduction Plan, effective May 19, 2017. Fonseca applied for a new job with 3D Systems, but 3D Systems did not even offer him an interview for any of the open positions for which he was qualified. Fonseca would have applied to 3D Systems sooner, but for the directives from HP management informing him of the repercussions if he did so. ER-66-68, 74-75.

## C. Procedural History

In November 2017, Fonseca filed this class action alleging only California state-law claims in San Diego County Superior Court. The first four counts alleged

age discrimination claims on behalf of Fonseca and an "age discrimination class" under California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 et seq. ECF Doc. 22-2 at 15-50.

Counts Five and Six alleged non-FEHA claims arising out of the no-poach agreement on behalf of Fonseca and an "anti-trust class." Specifically, Count Five alleged violation of California's Cartwright Act, Cal. Bus. & Prof. Code § 16270 et seq., and Count Six alleged violation of a California statute prohibiting contracts restraining anyone from engaging in a lawful profession, trade, or business. Cal. Bus. & Prof. Code § 16600. Finally, Count Seven alleged an unfair competition claim on behalf of both classes. Cal. Bus. & Prof. Code § 17200 et seq. ECF Doc. 22-2 at 15-50.

HP removed the action to federal court, asserting that Fonseca's state-law claims were completely preempted by the Employee Retirement Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. ECF Doc. 22-2 at 8-12. The district court disagreed and remanded the action back to California state court. ECF Doc. 22-2 at 92-98.

In April 2019, Judge Timothy B. Taylor of San Diego Superior Court stayed the case "except with respect to the two 'no poach' antitrust counts (Counts Five and Six)" pending the resolution of a related age discrimination case against HP in the Northern District of California, *Forsyth v. HP Inc., et al.*, N.D. Cal. No. 5:16-cv-4775-EJD. ECF Doc. 22-2 at 100-05.

Fonseca filed a First Amended Complaint alleging the same seven counts as the original complaint. HP demurred to Counts Five and Six. In August 2019, Judge Taylor sustained the demurrer to Counts Five and Six with leave to amend. ECF Doc. 22-2.

Fonseca filed a Second Amended Complaint. ER-132-218. In addition to the seven original counts, Fonseca alleged an eighth count for violation of the Sherman Act, 15 U.S.C. § 1 et seq., on behalf of himself and the anti-trust class, based on the no-poach agreement. ER-172-73.

In September 2019, HP removed the action to federal court again on two grounds: (1) federal question jurisdiction under 28 U.S.C. §1331 as a result of the Sherman Act claim; and (2) federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). ECF Doc. 1.

HP filed a motion to dismiss Count Five (the Cartwright Act claim), Count Six (the Section 16600 claim), and Count Eight (the Sherman Act claim). ECF Doc. 10. The district court granted the motion with leave to amend. ER-110-30.

Fonseca filed a Third Amended Complaint alleging the same eight causes of action as the Second Amended Complaint, with additional details regarding the no-poach agreement. ER-51-109.

HP filed another motion to dismiss Counts Five, Six and Eight for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and lack of subject matter jurisdiction (standing) under Fed. R. Civ. P. 12(b)(1). ECF Doc. 18.

On August 11, 2020, the district court granted HP's motion to dismiss Counts Five, Six, and Eight of the Third Amended Complaint. ER-14-50. As to Counts Five and Eight (the Cartwright Act and Sherman Act claims), the court found that Fonseca had failed to allege sufficient facts to state a plausible claim of the existence of a no-poach agreement; Fonseca failed to plead additional facts to exclude the possibility that HP's actions were the result of independent conduct; and Fonseca lacked standing because he failed to allege sufficient facts to establish that HP and 3D Systems were engaged in a no-poach agreement. ER-23-36. As to Count Six (the Section 16600 claim), the court found that to the extent it was based on the no-poach agreement, Fonseca had failed to adequately allege the existence of such an agreement.[1] ER-36-45.

Fonseca filed a motion for immediate entry of judgment on Counts Five, Six, and Eight pursuant to Fed. R. Civ. P. 54(b), or alternatively, for certification of the August 11, 2020 order for interlocutory appeal under 28 U.S.C. § 1292(b). ECF Doc. 47. The district court granted the Rule 54(b) motion for immediate entry of judgment on these counts on October 21, 2020. ER-3-13. Fonseca filed a timely notice of appeal on November 4, 2020. ER-220-21. Appellees filed a motion to dismiss the

---

[1]As to Count Six, the court also found that to the extent it was based on a Rehire Policy allegedly incorporated into HP's Workplace Reduction Plan, it failed to state a claim because (1) the Workplace Reduction Plan did not incorporate the Rehire Policy; and (2) such a claim would be preempted by ERISA. ER-45-49. Plaintiff is not pursuing this part of his Section 16600 claim on appeal, but he is still pursuing this claim to the extent it is based on the no-poach agreement.

appeal, which this Court denied on February 16, 2021.

## SUMMARY OF ARGUMENT

**1.** The district court erred by dismissing counts five, six, and eight on the pleadings. Contrary to the ruling below, the operative complaint adequately alleges the existence of a no-poach agreement between HP and 3D Systems. It describes the circumstances leading up to the no-poach agreement; it identifies by name the executives who made the agreement; it states the substance of the agreement; it specifies when and how the agreement was made and went into effect; and it alleges what actions the companies took in furtherance of the agreement. Nothing more was required. Because additional details are known only to HP and 3D Systems, plaintiff cannot be expected to allege more without the benefit of any discovery.

**2.** The complaint also pleads sufficient facts to allege that Fonseca was harmed by the no-poach agreement and has standing to sue. Specifically, the complaint alleges that the purpose and effect of the agreement was to depress the wages HP paid to Fonseca and other employees. Without the no-poach agreement, HP would have been forced to pay higher wages to retain its employees and prevent 3D Systems from poaching them. Construing the complaint in the light most favorable to Fonseca, it alleges that he would have received higher wages at HP from August 2016, when the no-poach agreement took effect, until his termination in May 2017. Moreover, the complaint also alleges that the actions HP took in furtherance of the no-poach agreement deterred and prevented Fonseca from applying for a higher-

paying job at 3D Systems before his termination. These are sufficient allegations of harm to satisfy Article III and anti-trust standing requirements.

## ARGUMENT

### I. Reviewability and Standard of Review

The court "review[s] de novo questions of law raised in dismissals under Rules 12(b)(1) and 12(b)(6)." *North County Community Alliance, Inc. v. Salazar*, 573 F.3d 738, 741 (9th Cir. 2009). The "court must 'accept all allegations of material fact as true and construe them in the light most favorable' to the [plaintiff]." *Id.* at 741-42 (citation omitted).

Fonseca raised the issues asserted in this appeal in his opposition and supplemental oppositions to HP's motion to dismiss, and at the hearing on the motion. ECF Docs. 22, 32, 44, 42.

### II. The District Court Erred by Dismissing the Sherman Act and Cartwright Act Claims

#### A. Fonseca Adequately Alleged the Existence of the No-Poach Agreement

The district court dismissed the Sherman Act and Cartwright Act claims on the ground that the Third Amended Complaint ("TAC") failed to provide sufficiently detailed factual allegations regarding the existence of the alleged no-poach agreement. ER-23-32. This was reversible error.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint "does not need detailed factual allegations," but the rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ibid.* "Factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Ibid.* "'Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of the complaint's factual allegations.'" *Id.* at 556.

"In applying these standards to a [Sherman Act] claim, … stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. But this "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Ibid.* "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Ibid.*

*Twombly* does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The

plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that the defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'" *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011).

Applying the usual "assumption that all of the allegations in the complaint are true," *Twombly*, 550 U.S. at 555, Fonseca's allegations of an unlawful no-poach agreement between HP and 3D Systems satisfy the plausibility pleading standard. The TAC alleges that HP was expanding into an emerging and highly competitive 3D printing market in 2016. Technology employees in the market were in high demand because of their specialized technology skills and ability. As HP was expanding into the 3D printing market, its competitor 3D Systems began aggressively poaching HP's top talent. In early 2016, 3D Systems hired HP's Vice President of Imaging and Printing, Vyomesh Joshi, as its new CEO. Joshi almost immediately began hiring other HP executives, managers, and engineers, including six high-level HP employees who were recruited to the 3D Systems management team. ER-68-70.

Shortly after 3D Systems began its aggressive recruiting of HP employees in 2016, HP and 3D Systems entered into a "cease-fire" in the form of a no-poach agreement, under which they agreed to refrain from soliciting each other's employees and to dissuade their own employees from applying for work at the other company.

12

This "cease-fire" arrangement was initiated in a phone call made to Joshi by Ron Coughlin, an HP executive who had recently had some of his top employees hired away by Joshi and 3D Systems. Coughlin called Joshi and told him to stop hiring HP's employees. During this phone call and subsequent communications between Joshi, Coughlin, and HP executive Stephen Nigro (the President of HP's 3D printing unit), Joshi agreed to comply so long as the agreement was mutual. Accordingly, beginning around August 2016, 3D Systems and HP ceased cold-calling each other's employees and ceased hiring one another's employees through third-party recruiting firms. HP also threatened its own employees that they would be fired and would lose their severance benefits if they applied to 3D Systems. ER-71-75.

These allegations are enough to "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The complaint identifies by name the HP and 3D Systems executives who made the unlawful no-poaching agreement; it alleges that the agreement was made in 2016 after 3D Systems started aggressively poaching HP's top employees in a highly competitive environment; and it specifies that the agreement was made in a telephone call initiated by Coughlin and subsequent communications between Joshi, Coughlin, and Nigro. It also specifies what actions the companies took in furtherance of the agreement beginning around August 2016, i.e., they stopped cold-calling each other's employees and stopped hiring them through third-party recruiters, and HP managers threatened to (and did) retaliate against HP employees if they applied to 3D Systems. Thus, the complaint contains "enough

factual matter (taken as true) to suggest that an agreement was made" and "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 556.

Because the complaint alleges an actual no-poach agreement between HP and 3D Systems, this case does not implicate *Twombly*'s ruling that mere allegations of parallel conduct are not enough without additional facts sufficient to infer the existence of an agreement. *Twombly* itself emphasized that the complaint there left "no doubt that plaintiffs rest their [Sherman Act] claim on descriptions of parallel conduct *and not on any independent allegation of actual agreement among the [alleged conspirators]*.." *Twombly*, 550 U.S. at 564 (emphasis added). By contrast, the complaint here alleges the existence and nature of an actual agreement between HP and 3D Systems. In light of these allegations of an actual agreement, there was no need to plead additional facts to support an inference of agreement.

## B. The District Court's Analysis Was Faulty

The district court committed several analytical errors in dismissing the Sherman Act and Cartwright Act claims. First, in demanding greater factual details, the district court "impermissibly applied what amount[s] to a heightened pleading requirement by insisting that [the plaintiff] allege 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. For example, the district court faulted the complaint for failing "to identify the reporting witness" to the telephone call, failing to "state when in 2016 the

telephone call occurred," failing to allege "where Joshi and Coughlin were when the call was made," and failing to "identify any email or document that memorialized the 'cease-fire arrangement.'" ER-26:5-9. None of these specifics are necessary to comply with the "short and plain statement" requirement of Rule 8(a)(2). Again, *Twombly* does "not require heightened fact pleading of specifics …." *Id.* at 570.

Second, the district court ruled that the complaint was deficient because it "failed to go beyond allegations that are based 'on information and belief.'" ER-26:10-11. But "'[t]he *Twombly* plausibility standard … does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citation omitted); *see also Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[W]e relax pleading requirements where the relevant facts are only known to the defendant."). Here, the details of the agreement between HP and 3D are peculiarly within their possession and control. "Because many of the relevant facts are known only to the defendant," Fonseca "has pleaded sufficient facts to state a plausible claim" based on the no-poach agreement. *Soo Park*, 851 F.3d at 928-29.

Third, the district court concluded that plaintiff's allegations "fall short of those that have been found to be sufficient in" two other district court cases. ER-27:21-22. But the facts pled in other unrelated cases do not set the bar for a valid

15

pleading under *Twombly. See, e.g., Evergreen Partnering Group, Inc. v. Pactiv Corp.*, 720 F.3d 33, 50 (1st Cir. 2013) (holding that district court "went beyond *Twombly*'s pleading requirements when it found [plaintiff's] complaint deficient as compared to those in other cases that pled 'highly specific details ….'"]).

Finally, the district court erred by relying on its own disbelief of the allegations regarding the no-poach agreement. For example, without the benefit of any discovery, the district court opined that Joshi "had little, if any incentive, to enter such an agreement." ER-26:16. But the complaint explicitly alleges that Joshi *did* agree to it in his communications with Coughlin and Nigro. ER-71. There could be many different reasons why Joshi would have agreed to the no-poach agreement on behalf of 3D Systems, including to avoid antagonizing a huge competitor with the ability to retaliate by starting a price war or engaging in other retributive actions. Without any discovery to explore Joshi's motivations, the complaint cannot be dismissed on this basis.

As noted, *Twombly* does not allow the court to dismiss a Sherman Act complaint based on its own disbelief of the allegations. *Twombly*, 550 U.S. at 555-56; *see also Evergreen Partnering*, 720 F.3d at 45 ("It is not for the court to decide, at the pleading stage, which inferences are more plausible than other competing inferences, since those questions are properly left to the factfinder"). "A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of events

merely because the court finds a different version more plausible." *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

For all these reasons, the district court erred by ruling that Fonseca failed to adequately allege the existence of the no-poach agreement.

## C. Fonseca Alleged Injury Sufficient to Confer Article III and Anti-Trust Standing

The district court also concluded that Fonseca failed to allege an injury sufficient to confer standing. ER-32-36. The basis for this conclusion was that Fonseca "failed to allege sufficient facts to establish HP and 3D Systems were engaged in a no-poach agreement, as described above." ER-36:13-14. For the reasons already discussed above, this was error. Fonseca adequately alleged not only the existence of the no-poach agreement, but also that he was harmed by it.

"As with all federal claims, a plaintiff must establish Article III standing, which requires proof of (1) injury-in-fact, (2) causation, and (3) redressability." *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 914, 921-22 (9th Cir. 2015). "'For Article III purposes, an antitrust plaintiff establishes injury-in-fact when he has suffered an injury which bears a causal connection to the alleged antitrust violation.'" *Id.* at 922 (citation omitted). "In addition to Article III standing, private antitrust plaintiffs must also demonstrate antitrust injury, which is (1) 'injury of the type the antitrust laws were intended to prevent' that also (2) 'flows from that which makes defendants' acts unlawful.'" *Id.* (citation omitted). The same antitrust standing requirement applies to

17

California's Cartwright Act. *Kolling v. Dow Jones & Co.*, 137 Cal. App. 3d 709, 723-24 (Cal. Ct. App. 1982); *Theme Promotions, Inc. v. News America Marketing FSI*, 546 F.3d 991, 1003 (9th Cir 2008).

Fonseca alleged sufficient injury to satisfy all of these requirements. First, he alleged that the no-poach agreement depressed his wages at HP from around August 2016 (when the no-poach agreement took effect) until his termination in May 2017. Before the no-poach agreement, average salaries at 3D Systems were significantly higher than those paid to Fonseca and other HP employees. ER-71. Thus, "3D Systems could more easily poach HP employees by offering them more compensation, and HP wanted to avoid a bidding war to prevent incurring added costs of retaining talented employees." *Id.* After the no-poach agreement, however, HP and 3D Systems "shared pay scales with one another to assure that they would not be in a bidding war ... to retain top talent." *Id.* As a result, HP did not have to raise wages to retain its employees, because the companies were "not bidding against each other." ER-80:16. Because of the no-poach agreement, HP was "not pressured to outbid 3D Systems for outgoing employees' services, [and] thus paid below-market rates for their employees' services." ER-79:24-26. Accordingly, the no-poach agreement "suppressed" the wages HP paid to Fonseca and other HP employees. ER-71-72 (¶63); ER-74-75 (¶71), ER-80 (¶¶ 84-85); ER-85 (¶98); ER-97-98 (¶¶150-51); ER-106-07 (¶¶ 188-89).

These allegations of suppressed wages are sufficient to plead an injury of the type the antitrust laws were intended to prevent—and which was caused by the anti-competitive conduct that made HP's conduct unlawful. "'Just as antitrust law seeks to preserve the free market opportunities of buyers and sellers, so also it seeks to do the same for buyers and sellers of employment services.'" *Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 544 (9th Cir. 1995) (citation omitted). Accordingly, an employee's allegation that, as a result of his employer's agreement with competitors not to compete for employees, he did not receive "the increase in compensation he would have obtained but for the illegal agreement ... is sufficient to allege antitrust standing." *Id.* at 545.

Other courts have likewise "concluded plaintiffs have standing to pursue antitrust claims based on no-hire [or no-poach] agreements when they allege their wages were depressed by such agreements." *Turner v. McDonald's USA, LLC*, 2020 WL 3044086, at *2 (N.D. Ill. Apr. 24, 2020) (citing *Blanton v. Domino's Pizza Franchising LLC*, 2019 WL 2247731, at *3-4 (N.D. Mich. May 24, 2019); *Butler v. Jimmy John's Franchise, LLC*, 331 F. Supp. 3d 786, 793-94 (S.D. Ill. 2018)); *see also Hunter v. Booz Allen Hamilton, Inc.*, 418 F. Supp. 3d 214, 223 (S.D. Ohio 2019) ("Plaintiffs alleged that the no-poach agreements ... 'did in fact suppress wages, benefit[s], and other aspects of compensation and eliminate competition'" and thus "pleaded ... an injury of the type the antitrust laws were intended to prevent"); *In re Papa John's Employee and Franchisee Employee Antitrust Litigation*, 2019 WL 5386484, at *9 (W.D. Ky. Oct. 21,

2019) (finding plaintiffs "sufficiently plead antitrust injury" by alleging that no-hire provision "had the purpose and effect of depressing wages and diminishing employment opportunities").

Second, Fonseca also alleged that he was dissuaded from applying to 3D Systems before his termination from HP as a result of the no-poach agreement. ER-72-74 (¶¶ 65-71). "[S]everal courts ... have found that no-hire agreements which preclude employees from seeking employment from a third party employer can give rise to antitrust injury." *Eichorn v. AT & T Corp.*, 248 F.3d 131, 142 (3d Cir. 2001) (citing *Cesnick v. Chrysler Corp.*, 490 F. Supp. 859 (M.D. Tenn. 1980); *Roman v. Cessna Aircraft Co.*, 55 F.3d 542 (10th Cir. 1995); *Law v. National Collegiate Athletic Ass'n*, 134 F.3d 1010 (10th Cir. 1998)). Thus, Fonseca adequately alleged that he suffered injury sufficient to satisfy Article III and anti-trust standing requirements.

## III.  The District Court Erred by Dismissing the Section 16600 Claim to the Extent it Was Based on the No-Poach Agreement

Fonseca's complaint also alleged that the no-poach agreement violated California Business & Professions Code section 16600, which voids "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business." The district court dismissed this part of the Section 16600 claim for the same reason it dismissed the anti-trust claims. The court explained: "As discussed at length in the preceding sections, Plaintiff has failed to sufficiently plead allegations regarding the existence of the no-poach agreement; therefore, insofar as the Section

16600 claim is premised on the existence of the no-poach agreement by HP and 3D Systems, Plaintiff's sixth cause of action is dismissed." ER-37:10-14.

For all the reasons discussed in Argument II, Fonseca did adequately allege the existence of the no-poach agreement. Thus, the district court's ruling on the Section 16600 claim should be reversed as well.

## IV. Assuming Any Deficiency in the Complaint, Fonseca Should be Granted Leave to Amend

Alternatively, even assuming that the complaint is defective, the district court abused its discretion by denying leave to amend. Leave to amend must be granted if it appears at all possible that the plaintiff can correct the defect. *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc). Here, it is at least possible that Fonseca could cure any defect by amending the complaint.

## CONCLUSION

The judgment of dismissal should be reversed.

Dated: March 15, 2021        LAW OFFICE OF MARTIN N. BUCHANAN, APC

By:     /s/ Martin N. Buchanan      
              Attorney for Appellant
              Bryant Fonseca

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(c) and Ninth Circuit

Rule 32-1, I certify that the attached brief is proportionately spaced, has a typeface of

14 points and contains 5,176 words.

Dated: March 15, 2021        LAW OFFICE OF MARTIN N.
BUCHANAN, APC


By:     /s/ Martin N. Buchanan      
             Attorney for Appellant
             Bryant Fonseca

## STATEMENT OF RELATED CASES

Counsel for appellant is not aware of any related cases currently pending before this Court within the definition of Ninth Circuit rule 28-2.6.

Dated: March 15, 2021                    LAW OFFICE OF MARTIN N.
                                         BUCHANAN, APC

                                         By: ___/s/ Martin N. Buchanan_____
                                                Attorney for Appellant
                                                Bryant Fonseca

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 15, 2021.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

By:  <u>/s/ Martin N. Buchanan</u>
Martin N. Buchanan