**No. 20-56161**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

―――――――――――――――――――――――

BRYANT FONSECA, an individual, on behalf of himself and all others similarly situated, and on behalf of the general public,

Plaintiff - Appellant,

v.

HEWLETT-PACKARD COMPANY; HP ENTERPRISE SERVICES, LLC, a Delaware Limited Liability Company; HP, INC., a Delaware corporation,

Defendants - Appellees,

―――――――――――――――――――――――

On Appeal from the United States District Court
for the Southern District of California

Case No. 3:19-cv-01748-GPC-MSB
Hon. Gonzalo P. Curiel

―――――――――――――――――――――――

**APPELLEES' ANSWERING BRIEF**

―――――――――――――――――――――――

**WILSON TURNER KOSMO LLP**
MERYL C. MANEKER (188342)
KATHERINE M. MCCRAY (243500)
VALERIE PHAN (306503)
402 West Broadway, Suite 1600
San Diego, California 92101-3632
(619) 236-9600 (phone)
(619) 236-9669 (fax)

*Attorneys for Defendants-Appellees HP INC.*
*(fka Hewlett-Packard Company) and PERSPECTA ENTERPRISE*
*SOLUTIONS LLC (fka HP Enterprise Services, LLC)*

## **TABLE OF CONTENTS**

I.    ISSUES PRESENTED ...................................................................1

II.   INTRODUCTION ........................................................................2

III.  JURISDICTIONAL STATEMENT .............................................4

IV.  FACTUAL AND PROCEDURAL STATEMENT OF THE CASE ..............5

     A.    Factual Background.............................................................5

     B.    Procedural History.............................................................7

          1.    The Original Complaint. ...........................................7

          2.    The First Amended Complaint....................................9

          3.    The Second Amended Complaint. .............................10

          4.    The Operative Third Amended Complaint. ...............12

          5.    The District Court's Order Granting Appellees' Motion To Dismiss Counts Five, Six, And Eight Of The Third Amended Complaint.....................................................................13

V.    SUMMARY OF THE ARGUMENT .........................................15

VI.  STANDARD OF REVIEW ........................................................17

VII. ARGUMENT.............................................................................18

     A.    The District Court Correctly Concluded Fonseca Failed To State A Claim For Violation Of The Sherman Act, The Cartwright Act, And Section 16600. .....................................................................18

          1.    The District Court Applied The Correct Legal Standard—Antitrust Claims Must Plead "Who, What, When, And How" Regarding An Alleged Conspiracy. ..........................................18

          2.    The District Court Properly Dismissed Fonseca's Sherman Act And Cartwright Act Claims Because He Failed To Plead Facts Sufficient To Plausibly Establish Appellees Entered An Unlawful "No-Poach Agreement."...........................................23

      a.     Fonseca's Alleged "Direct Evidence" Is Not Sufficient To Establish The Existence Of A Conspiracy. ...............23

           i.     The District Court's Conclusion Is Consistent With This Court's Precedent And The Courts In This Circuit. .................................................................27

           ii.    The Allegations Made "On Information And Belief" Are Not Supported By Factual Context That Makes The Conspiracy Plausible. ................30

      b.     Fonseca Failed To Plead Circumstantial Evidence Of The Alleged "No-Poach Agreement" Through Parallel Conduct. .........................................................................35

   3.     The District Properly Dismissed Fonseca's Section 16600 Claim Because He Failed To Plead Facts Supporting The Existence Of The "No-Poach Agreement." .............................38

B.     In The Alternative, The District Court Properly Dismissed Fonseca's Claims For Violation Of The Sherman Act, The Cartwright Act, And Section 16600 Because He Did Not Establish Standing. .....................39

   1.     The District Court Correctly Determined Fonseca Cannot Establish Injury Because He Failed To Plead The Existence Of The Alleged "No-Poach Agreement." ......................................41

   2.     The Sherman Act And Cartwright Act Claims Were Properly Dismissed Because Fonseca's Allegations Are Insufficient To Establish Standing. ....................................................41

      a.     Fonseca's Allegation Of Wage Depression Is Conclusory And Not Supported By Facts. .........................42

      b.     Fonseca's Allegation He Was "Dissuaded" From Applying To 3D Systems Is Speculative. .......................46

   3.     Fonseca's Section 16600 Claim Was Properly Dismissed Because He Lacks Standing To Recover Declaratory And Injunctive Relief. ........................................................47

C.    The District Court Did Not Abuse Its Discretion In Dismissing The Sherman Act, Cartwright Act, And Section 16600 Claims With Prejudice. ............................................................................48

D.    The District Court's Dismissal Of Perspecta Enterprise Solutions Should Be Affirmed Because There Are No Facts Pled Regarding Its Involvement In The Alleged "No-Poach Agreement." .......................49

VIII.  CONCLUSION.................................................................................51

CERTIFICATE OF COMPLIANCE......................................................52

STATEMENT OF RELATED CASES ..................................................53

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abagninin v. AMVAC Chem. Corp.*,
   545 F.3d 733 (9th Cir. 2008) ..................................................................48

*ASARCO, LLC v. Union Pac. R. Co.*,
   765 F.3d 999 (9th Cir. 2014) .................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................*passim*

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................*passim*

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
   691 F. App'x 389 (9th Cir. 2017) ....................................................27, 29

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977)..................................................................40

*Butler v. Jimmy John's Franchise, LLC*,
   331 F. Supp. 3d 786 (S.D. Ill. 2018)..................................................46

*Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*,
   626 F.3d 483 (9th Cir. 2010) ........................................................38, 39

*Cnty. of Tuolumne v. Sonora Cmty. Hosp.*,
   236 F.3d 1148 (9th Cir. 2001) ........................................................20

*Colony Cove Props., LLC v. City Of Carson*,
   640 F.3d 948 (9th Cir. 2011) ........................................................17

*Concha v. London*,
   62 F.3d 1493 (9th Cir. 1995) ........................................................30

*Disney Enters., Inc. v. VidAngel, Inc.*,
   No. 2:16-CV-04109-ABP-LAX, 2017 WL 6883685 (C.D. Cal.
   Aug. 10, 2017) ........................................................21

iv

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ..............................................................18

*Eichorn v. AT & T Corp.*,
   248 F.3d 131 (3d Cir. 2001) ........................................................46, 47

*Feminist Women's Health Ctr. v. Roberts*,
   No. C86-161Z, 1989 WL 56017 (W.D. Wash. May 5, 1989)...........................22

*Frost v. LG Elecs. Inc.*,
   No. 16-CV-05206-BLF, 2018 WL 6256790 (N.D. Cal. July 9,
   2018) .................................................................................21, 28, 29

*Gerlinger v. Amazon.com Inc.*,
   526 F.3d 1253 (9th Cir. 2008) ..........................................................40

*Gonzalez v. Planned Parenthood of Los Angeles*,
   759 F.3d 1112 (9th Cir. 2014) ..........................................................49

*Hall v. N. Am. Van Lines, Inc.*,
   476 F.3d 683 (9th Cir. 2007) ......................................18, 41, 42, 43

*Hunter v. Booz Allen Hamilton, Inc.*,
   418 F. Supp. 3d 214 (S.D. Ohio 2019) ..............................................46

*In re Animation Workers Antitrust Litig.*,
   123 F. Supp. 3d 1175 (N.D. Cal. 2015)...............................................29

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) ....................................................34, 36

*In re Dynamic Random Access Memory Indirect Purchaser Litig.*,
   No. 4:18-CV-2518-JSW-KAW, 2020 WL 8459279 (N.D. Cal. Nov. 24,
   2020) ........................................................................20, 22, 34

*In re High-Tech Emp. Antitrust Litig.*,
   856 F. Supp. 2d 1103 (N.D. Cal. 2012)..........................................20, 29

*In re Late Fee and Over-Limit Fee Litig.*,
   528 F. Supp. 2d 953 (N.D. Cal. 2007)................................................27

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) ....................................................22, 24

v

*In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*,
    No. 3:18-CV-00825-JHM, 2019 WL 5386484 (W.D. Ky. Oct. 21,
    2019) ................................................................................................46

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ............................................50

*Jones v. Micron Tech. Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019)...............................16, 21, 22, 23

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ...................................................*passim*

*Menzel v. Scholastic, Inc.*,
    No. 17-CV-05499-EMC, 2018 WL 1400386 (N.D. Cal. Mar. 19,
    2018) ...............................................................................16, 31, 33

*NorthBay Healthcare Grp., Inc. v. Kaiser Foundation Health Plan, Inc.*,
    No. 17-CV-05005-LB, 2017 WL 6059299 (N.D. Cal. Dec. 7, 2017)..........31, 50

*Persian Gulf Inc. v. BP W. Coast Prod. LLC*,
    No. 3:15-CV-01749-L-BGS, 2016 WL 4574357 (S.D. Cal. July 14,
    2016) ................................................................................................22

*Richey v. Axon Enters., Inc.*,
    437 F. Supp. 3d 835 (D. Nev. 2020)..................................................40

*Roman v. Cessna Aircraft Co.*,
    55 F.3d 542 (10th Cir. 1995) ......................................................43, 44

*Sky Angel U.S., LLC v. Nat'l Cable Satellite Corp.*,
    296 F.R.D. 1 (D.D.C. 2013)................................................................21

*Slack v. Int'l Union of Operating Eng'rs*,
    No. C-13-5001 EMC, 2014 WL 4090383 (N.D. Cal. Aug. 19,
    2014) ................................................................................................47

*Slayman v. FedEx Ground Package Sys., Inc.*,
    765 F.3d 1033 (9th Cir. 2014) ..........................................................47

*Soo Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017) ............................................16, 30, 31, 33

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).................................................................40, 46

*Turner v. McDonald's USA, LLC*,
    No. 19-C-5524, 2020 WL 3044086 (N.D. Ill. Apr. 24, 2020) ..........................45

*Ulrich v. Moody's Corp.*,
    No. 13-CIV-0008-VSB-MHD, 2014 WL 12776746 (S.D.N.Y.
    Mar. 31, 2014)......................................................................................45

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...............................................................49

**Federal Statutes**

15 U.S.C. section 1.......................................................................*passim*

28 U.S.C. section 1331 ...................................................................4

28 U.S.C. section 1332(d)................................................................4

29 U.S.C. section 1001 ...................................................................8

42 U.S.C. section 1983 ..................................................................31

**State Statutes**

California Business and Professions Code section 16600...................................1, 39

California Business and Professions Code section 16720.......................................1

**Rules**

Federal Rule of Appellate Procedure 4 ........................................................................4

Federal Rule of Civil Procedure 54 ........................................................................4, 5

Federal Rule of Civil Procedure 12 ................................................13, 17, 18, 40, 48

# I.    ISSUES PRESENTED

1.    Did the district court correctly conclude Plaintiff-Appellant Bryant Fonseca's Third Amended Complaint ("TAC") failed to set forth sufficient factual allegations of an antitrust conspiracy, in the form of an unlawful "no-poach agreement," to state claims for violations of the Sherman Act, 15 U.S.C. § 1; California's Cartwright Act, Cal. Bus. & Prof. Code § 16720, *et seq.*; and California Business and Professions Code section 16600 ("Section 16600")?

2.    Did the district court correctly conclude Plaintiff-Appellant Bryant Fonseca failed to set forth sufficient factual allegations to establish standing to assert a claim for violation of the Sherman Act, Cartwright Act or Section 16600?

3.    Having found Plaintiff-Appellant Bryant Fonseca failed to state plausible claims for violation of the Sherman Act, Cartwright Act, and Section 16600 after four attempts to do so, did the district court act within its discretion in dismissing the claims with prejudice?

4.    Should this Court separately affirm the district court's dismissal of the claims at issue against Defendant-Appellee Perspecta Enterprise Solutions LLC, formerly known as HP Enterprise Services LLC, on the ground that Plaintiff-Appellant Bryant Fonseca failed to plead any specific facts that it was involved in the alleged conspiracy?

## II. INTRODUCTION

Plaintiff-Appellant Bryant Fonseca ("Fonseca") has repeatedly attempted to bootstrap antitrust claims to his currently-stayed age discrimination lawsuit based on the specious assertion that his former employer, Defendant-Appellee HP Inc. ("HP Inc."),[1] and another entity, Defendant-Appellee Perspecta Enterprise Solutions, LLC ("ES-Perspecta"),[2] engaged in a conspiracy with a third party, 3D Systems, Inc. ("3D Systems"). He has tried—on four separate occasions—to state claims for violations of the Sherman Act, the Cartwright Act, and Section 16600, asserting HP Inc. and ES-Perspecta (collectively, "Appellees") entered into a so-called "no-poach agreement" with 3D Systems whereby the companies allegedly agreed not to solicit each other's employees. But Fonseca has continually failed to state a plausible claim. He voluntarily withdrew his first attempt, and his three subsequent attempts have been rejected by two different courts as insufficient.

The district court thoughtfully considered Fonseca's *fourth* articulation of the alleged conspiracy and properly dismissed the claims under the clear pleading

---

[1] Formerly known as Hewlett-Packard Company.

[2] Perspecta Enterprise Solutions, LLC was formerly known as HP Enterprise Services LLC and was referred to by that name in the TAC and the briefing below, where the parties abbreviated the company's name to "ES." *See, e.g.,* Excerpts of Record ("ER")-52:6-7; Supplemental Excerpts of Record ("SER")-143:18; SER-161:7-24 and n.9. To avoid confusion while acknowledging the entity's current name, it will be referred to herein as "ES-Perspecta."

standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042 (9th Cir. 2008). The central question in this appeal is whether the district court was correct in concluding that Fonseca failed to plead evidentiary facts which, if true, would plausibly establish that HP Inc. or ES-Perspecta entered an unlawful agreement with 3D Systems.

The only allegations even approaching "factual" content regarding this key question (other than pure conclusory assertions) are the claims—made on information and belief—that an executive from HP Inc. (Ron Coughlin) called an executive from 3D Systems (Vyomesh Joshi) and asked 3D Systems to stop hiring away HP Inc.'s executives; and that Joshi offered to stop if the "arrangement was mutual." But this is patently insufficient to establish—as Fonseca must—"who, did what, to whom (or with whom), where, and when." *Kendall*, 518 F.3d at 1048. Fonseca never pleads facts to support the conclusion an agreement was actually formed or that any person at HP Inc. ever agreed with Joshi's proffered "arrangement," nor does he plead facts that would establish the manner in which the agreement was made, the date it was made, or the substance of the final agreement.

Furthermore, the allegations are made only "on information and belief," and are not supported by the other factual context pled in the operative complaint.

3

Instead, as the district court found, the circumstances Fonseca himself alleges actually "belie the existence of any no-poach agreement." ER-27:6-8. Thus, the district court correctly concluded Fonseca's "opaque allegations do not nudge this alleged conspiracy from 'conceivable to plausible.'" ER-32:14-15 (citation omitted).

## III.    JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because the TAC asserts a federal claim for violation of the Sherman Act, 15 U.S.C. § 1. ER-106–07. Additionally, the district court had jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as Fonseca seeks to represent a nationwide class of more than one hundred members, the amount in controversy exceeds $5,000,000, and minimal diversity exists. ER-81–86; Dkt. No. 1.

On August 11, 2020, the district court granted Appellees' Motion to Dismiss Counts Five, Six, and Eight of the TAC without leave to amend. ER-14–50. On October 21, 2020, the district court granted Fonseca's motion for immediate entry of judgment on counts Five, Six, and Eight pursuant to Federal Rule of Civil Procedure 54(b). ER-3–13. Fonseca filed a notice of appeal on November 4, 2020. ER-220–223. The appeal was timely under Federal Rule of Appellate Procedure 4(a)(1)(A).

On January 5, 2021, Appellees filed a motion to dismiss the appeal for lack of jurisdiction on the grounds that the district court's October 21, 2020 order granting Fonseca's Rule 54(b)[3] motion was not a final order and was therefore non-appealable. Appellees' motion was denied on February 16, 2021.

## IV. FACTUAL AND PROCEDURAL STATEMENT OF THE CASE

### A. Factual Background[4]

HP Inc. is a manufacturer of computers and printers. ER-68:23-26. A portion of HP Inc.'s business includes 3D printers. ER-69:3-12.

Fonseca was employed by HP Inc. in San Diego, California as a "procurement associate" in HP Inc.'s "CHIL" work group, where he "work[ed] with vendors . . . in order to obtain . . . supplies," such as raw materials or parts for the group's research and development of products. ER-56:24–57:4.[5] In May 2017,

---

[3]     This and all future reference to Rules are to the Federal Rules of Civil Procedure, unless otherwise noted.

[4]     As this is an appeal from a district court's grant of a motion to dismiss, the facts are drawn – as they must be – from the allegations of the TAC. Appellees do not accept these allegations as true.

[5]     HP Inc. was Fonseca's employer. ES-Perspecta (then known as HP Enterprise Services LLC) is a former subsidiary of Hewlett Packard Enterprise Company, a company created in November 2015 by the spinoff from HP Inc. of the latter's enterprise products, software, and services business. As he did in the prior versions of his complaint, Fonseca uses the term "HP" without reference to a particular appellee but, rather, as a collective reference to Appellees HP Inc. and ES-Perspecta, as well as HP Inc.'s prior name, Hewlett-Packard Company. ER-52:3-10. However, ES-Perspecta is improperly named as a defendant, and the

Fonseca's employment was terminated and he became eligible for benefits under a Workforce Reduction Plan ("WFR Plan"). ER-66:8-25; Dkt. No. 22-2 at pp. 121-134.[6] Fonseca was one of thousands of employees laid off by HP Inc. over the better part of the last decade as the company attempted a turn-around in the face of stagnation in the personal computer and printing markets, among other challenges. Fonseca alleges "HP's terminations under its Workforce Reduction Plan are actually targeted to eliminate older, age-protected workers in grossly disproportionate numbers." ER-61:1-4.

Third-party 3D Systems also builds 3D printers and equipment. ER-69:6-12. Fonseca alleges that in 2017, after he left HP Inc., he applied to 3D Systems and reached out to two of its hiring managers. ER-74:18-26. 3D Systems did not hire Fonseca, extend him an interview, or further contact him, which he suggests was the result of an alleged "'no poach' conspiracy" between 3D Systems and HP Inc. ER-74:25–75:7.

---

TAC only contains allegations regarding the business and personnel of HP Inc. ER-56:26–57:4; ER-68:23–74:8.

[6]     Appellees' citations to page numbers in documents filed in the district court are to the page numbers imprinted by the district court's Case Management/Electronic Case Filing System ("CM/ECF").

## B.  Procedural History

### 1.  The Original Complaint.

On November 29, 2017, after filing a charge with California's Department of Fair Employment and Housing, ER-56:13-19, Fonseca filed a seven-count putative class action complaint in California state court against Appellees for: (1) Age Discrimination in Violation of California's Fair Employment and Housing Act ("FEHA"): Disparate Treatment; (2) Age Discrimination in Violation of the FEHA: Disparate Impact; (3) Wrongful Termination in Violation of Public Policy Based on Age; (4) Failure to Prevent Discrimination in Violation of the FEHA; (5) Violation of California's Cartwright Act; (6) Violation of Section 16600; and (7) Violation of California's Unfair Competition Law, SER-221–256.  The majority of the Complaint's allegations concerned Fonseca's age discrimination claims.

Fonseca also asserted Appellees "engaged in a 'no poach' secret arrangement with 3D Systems, Inc." "in order to stop 3D Systems from attempting to hire outgoing HP employees" in violation of the Cartwright Act and Section 16600 (Counts Five and Six).  SER-233:20-21; SER-234:11-13.  He did not plead any details regarding when, where, or how the arrangement was reached, or what the terms of the alleged arrangement were.  Nor did he identify any person from HP Inc., ES-Perspecta, or 3D Systems who entered into the alleged arrangement.  With respect to injury, Fonseca offered only the conclusory assertion that "[t]he

7

intended and actual effect of this 'no poach' conspiracy was that it restricted recruitment, fixed and suppressed employee compensation, and imposed unlawful restrictions on employee mobility." SER-234:15-18.

On January 12, 2018, Appellees removed the action based on federal question jurisdiction, asserting some of Fonseca's claims were completely preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Dkt. No. 1-5 at pp. 51-111, Exh. A-2. On September 5, 2018, the district court, the Hon. Roger T. Benitez presiding, granted Fonseca's motion to remand, finding none of Fonseca's claims were completely preempted. Dkt. No. 1-18.

On April 12, 2019, the Superior Court for the County of San Diego, the Hon. Timothy B. Taylor presiding, entered an order staying Fonseca's case because of the pendency of the similar, previously-filed matter *Forsyth v. HP Inc., et al.,* United States District Court for the Northern District of California, Civil Action No. 5:16-cv-04775-EJD, "except with respect to the two 'no poach' antitrust counts (counts Five and Six)."[7] SER-218.

---

[7]    To date, Judge Taylor's April 12, 2019 order remains in effect and Fonseca's age discrimination claims remain stayed. Dkt. No. 46; SER-214–219.

### 2. The First Amended Complaint.

On April 22, 2019, in response to Appellees' then-pending demurrer to his claims for violation of the Cartwright Act and Section 16600 (Counts Five and Six), Fonseca filed a First Amended Complaint ("FAC"), which contained the same seven counts as the original Complaint. SER-174–212. In an effort to bolster his antitrust claims, Fonseca added allegations that 3D Systems had hired former HP Inc. employee, Vyomesh Joshi ("Joshi") to be its CEO in 2016[8]; Joshi had a "close business relationship" with HP Inc.'s Stephen Nigro, then a senior executive with the company; and after Joshi purportedly began poaching HP Inc.'s "top" employees, "HP's executives and 3D System's [sic] executives entered into a 'cease-fire', in the form of an anti-poach agreement—an agreement whereby each of HP and 3D Systems would take necessary measures to refrain from soliciting the hiring of one another's employees, and to dissuade their own current employees from applying for work at the other company." SER-187–188.

As the FAC's antitrust allegations remained deficient, Appellees again demurred to Fonseca's claims for violation of the Cartwright Act and Section 16600. Dkt. No. 1-11 at pp. 1-60, Exh. A-28. On August 2, 2019, Judge Taylor sustained the demurrer, finding Fonseca failed "to allege facts other than rumors

---

[8]     Fonseca inaccurately suggested Joshi was hired away from HP Inc., SER-187:3-9, when, in fact Joshi had left HP Inc. in 2012, ER-18 at n.2.

between HP employees and ambiguous directions from managers to support" his claim of an "agreement to cease 'poaching' each other's employees."   SER-172. Judge Taylor also held "the complaint fails to state enough facts to allege antitrust injury" or "to adequately allege that these acts resulted in damages suffered by" either Fonseca or the putative class, but granted Fonseca leave to amend.  *Id*.

### 3.    The Second Amended Complaint.

On August 12, 2019, Fonseca filed his Second Amended Complaint ("SAC").  ER-132–219.  The SAC included the same seven counts asserted in the previous complaints and an eighth count for violation of the Sherman Act, 15 U.S.C. § 1.  ER-172–173.  Fonseca did not add any new evidentiary facts regarding the who, what, where, and when of the alleged "no-poach agreement," but included more conclusory assertions of purported parallel conduct evincing such an agreement.  For example, he claimed—without providing any factual basis—that as a result of the alleged conspiracy, HP Inc. and 3D Systems "ceased cold-calling each other's employees," "ceased hiring one another's employees through third party recruiting firms," and "shared pay scales with one another to assure that they would not be in a bidding war with one another."  ER-147:3-8.[9]

---

[9]    Fonseca also broadened the putative "Antitrust Class," ER-153:23-25, and included references to and descriptions of various materials from and filings with state and federal agencies, *see* ER-149:10–151:22; ER-192–218.

Appellees removed the case on September 11, 2019 based on Fonseca's assertion of a federal claim, and because federal jurisdiction existed under CAFA. Dkt. No. 1. On September 18, 2019, Appellees filed a Motion to Dismiss Fonseca's claims for violation of the Cartwright Act, the Sherman Act, and Section 16600 (Counts Five, Six, and Eight of the SAC). Dkt. No. 10.

The district court granted Appellees' motion on February 3, 2020, and allowed Fonseca yet *another* attempt to adequately plead these claims. ER-110–130. The district court found Fonseca's proffered direct evidence of the alleged "no-poach agreement" regarding "who, did what, to whom (or with whom), where, and when" "fall[s] short of the standard of specificity as required by" *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1048 (9th Cir. 2008). ER-119:1–121:8. In particular, the district court noted "[a]lthough Plaintiff references the relationship between Joshi and Nigro, he fails to point to any specific connection or communication between the two with respect to a no-poach agreement." ER-121:2-4. The district court also found Fonseca's allegations of parallel conduct and plus factors were "either insufficient or otherwise [could] be independently explained by rational business decisions on the part of HP or 3D Systems." ER-124:16-20.

### 4. The Operative Third Amended Complaint.

On February 24, 2020, Fonseca filed the operative TAC, which constitutes his *fourth* attempt to adequately plead the antitrust claims. Remarkably, the TAC's description of the no-poach agreement is virtually identical to the SAC except it alleges for the first time:

> On information and belief through investigations, this "cease-fire" arrangement was initiated by a phone call made to Joshi by Ron Coughlin, who at the time was an HP executive who had recently had some of his top employees hired-away by Joshi and 3D Systems. Based on witness investigations, Plaintiff is informed and believes that Coughlin called Joshi and told him to stop hiring away HP's employees, and during this phone call and subsequent communications between Joshi, Coughlin and Nigro in 2016, Joshi agreed to comply so long as the arrangement was mutual.

ER-71:2-11; SER-51:8-17.[10]

Crucially, Fonseca still does not expressly allege any person at HP Inc. or ES-Perspecta *agreed* to any "mutual" course of action. Nor does he present any further specifics, including any details about the "subsequent communications" (i.e., how they occurred, who exactly was present, what was discussed, etc.), precisely where, when, and how the alleged "arrangement" was reached, or which companies were parties to the alleged "arrangement," despite being given multiple

---

[10] Ron Coughlin was President of HP Inc.'s Personal Systems division from late 2014 through mid-2018.

opportunities to provide this exact information. ER-70:24–71:11; ER-119:1–121:8. And although Fonseca vaguely claims the deal "began to take effect" "by approximately August 2016," ER-72:14-18, he admits he "is unaware of the exact date that this conspiracy began," ER-101:9-11.

Fonseca also attempted to add allegations to establish standing. However, although he contends the purported "no-poach agreement" suppressed employee wages, ER-79:20-26; ER-80:23-27, Fonseca never explains how or by how much. In fact, Fonseca never claims *his* compensation was ever reduced or suppressed during his employment with HP Inc., much less in the few months between when the alleged agreement began to take effect and he was laid off.

Finally, although in the prior iterations of his complaint, Fonseca's Section 16600 claim had been based entirely on the alleged "no-poach agreement," the TAC asserts the WFR Plan presents "an additional and independent ground" for the Section 16600 claim as it purportedly denies employees severance pay if they accept a position with a competitor. ER-99:19–100:3.

### 5. The District Court's Order Granting Appellees' Motion To Dismiss Counts Five, Six, And Eight Of The Third Amended Complaint.

On March 9, 2020, Appellees again moved to dismiss the Cartwright Act, Sherman Act, and Section 16600 claims for failure to state a claim under Rule 12(b)(6) and for lack of standing under Rule 12(b)(1). Dkt. No. 18. The district

court originally took the motion under submission and vacated the hearing on May 13, 2020. Dkt. No. 27.

On June 26, 2020, the district court requested additional briefing on whether the WFR plan qualified as a contract under Section 16600. Dkt. No. 28 at p. 2:2-7. On July 22, 2020, the district court heard extensive oral argument. Dkt. No. 38; SER-3–28. Shortly after the hearing, the district court ordered a second round of supplemental briefing, requesting that the parties address whether ERISA preempts a portion of Fonseca's Section 16600 claim. Dkt. No. 39.

On August 11, 2020, in a thoughtful 37-page opinion, the district court granted Appellees' motion to dismiss in its entirety, without leave to amend. ER-14–50. As discussed in greater detail below, the district court found Fonseca's allegations of "direct evidence" of an antitrust conspiracy (the "no-poach agreement") to be conclusory, ER-25:24–29:5, and not supported by "specific facts to demonstrate that the claim is plausible," ER-29:4-5. The district court further concluded Fonseca's allegations of parallel conduct were "either insufficient or independently explained by rational business decisions on the part of HP and therefore do not exclude the possibility that HP's actions were the result of independent conduct." ER-32:5-9 (citing *Kendall*, 518 F.3d at 1049).

The district court further agreed with Appellees that Fonseca could not establish standing to bring claims pursuant to the Sherman Act or the Cartwright

Act because he "failed to allege sufficient facts to establish HP and 3D Systems were engaged in a no-poach agreement" and thus "cannot show that he sustained any injury." ER-36:13-15. For the same reason, the district court dismissed the portion of Fonseca's Section 16600 claim premised on the purported "no-poach agreement." ER-37:8-14. Finally, the district court rejected Fonseca's alternate theory of recovery under Section 16600 based on the WFR Plan. ER-39:15–45:15; ER-48:16–49:17.

## V.   SUMMARY OF THE ARGUMENT

A.   The district court properly dismissed the claims at issue (for violation of the Sherman Act, Cartwright Act, and Section 16600) because Fonseca failed to plead sufficient facts that would plausibly establish an unlawful agreement. The pleading standard for both antitrust claims is clear (although Fonseca inexplicably ignores it) – an antitrust plaintiff must allege non-conclusory *evidentiary facts* that "answer the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048. Here, Fonseca claims Appellees entered into a "no-poach agreement" with 3D Systems, but after four attempts to marshal sufficient factual allegations of direct or circumstantial evidence of this alleged agreement, he still has not stated a plausible claim for relief.

Fonseca argues his TAC includes "direct" evidence, and states the Court need not consider whether he sufficiently pled allegations of circumstantial

15

evidence of parallel conduct. But Fonseca's allegations of direct evidence do not satisfy this Court's requirements as articulated in *Kendall*. He does not plead that any representative of either Appellee ever agreed with 3D Systems to take any unlawful action, let alone identify the precise scope of the agreement, the date it was entered, or the manner in which it was entered. The factual allegations do not evince an unlawful agreement *without* requiring the court to make any inferences, and therefore are not sufficient "direct" evidence of an agreement. *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 915 (N.D. Cal. 2019).

Furthermore, Fonseca's allegations are made "on information and belief" and are simply not entitled to the assumption of truth absent additional factual context making the claimed conspiracy plausible. *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Menzel v. Scholastic, Inc.*, No. 17-CV-05499-EMC, 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19, 2018). Here, the additional allegations of the TAC make the conspiracy *implausible* – they "tend to belie the existence of any no-poach agreement." ER-27:6-8.

B.      Moreover, Fonseca's claims were properly dismissed because he does not allege facts to demonstrate he has standing to bring the claims. To begin with, because his claimed injury turns on the existence of the "no-poach agreement," if the Court agrees that such an agreement was not plausibly pled, then the Court should similarly conclude Fonseca has suffered no injury.

In the alternative, even if the Court finds Fonseca adequately pled a plausible conspiracy, he has not established standing to pursue the claims. Fonseca has not pled *facts* to support his claim that his wages were suppressed by the alleged "no-poach agreement," nor that he was dissuaded from applying to 3D Systems. And Fonseca, a former employee of HP, Inc., lacks standing to pursue declaratory or injunctive relief—the only remedies he seeks under Section 16600.

C.    The district court did not abuse its discretion in dismissing Fonseca's claims *with prejudice*. He has already had four attempts to state a claim and has not identified any additional facts he could plead in good faith. Any further leave to amend would be futile.

D.    Finally, in the unlikely event the Court concludes Fonseca has stated any claim, the Court should nonetheless affirm the district court's dismissal of Defendant-Appellee Perspecta Enterprise Solutions LLP, as Fonseca failed to plead *any* facts related to this entity.

## VI.  STANDARD OF REVIEW

This Court "reviews de novo a district court's decision to grant a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)." *Colony Cove Props., LLC v. City Of Carson*, 640 F.3d 948, 955 (9th Cir. 2011) (citations omitted). If support exists in the record, a dismissal for failure to state a claim may

17

be affirmed on any ground, whether or not relied upon by the district court. *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 686 (9th Cir. 2007); *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). This Court reviews the decision to dismiss the complaint *with prejudice* for abuse of discretion. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016).

## VII. ARGUMENT

### A. The District Court Correctly Concluded Fonseca Failed To State A Claim For Violation Of The Sherman Act, The Cartwright Act, And Section 16600.

#### 1. The District Court Applied The Correct Legal Standard— Antitrust Claims Must Plead "Who, What, When, And How" Regarding An Alleged Conspiracy.

Despite Fonseca's suggestion that the district court applied an inappropriately heightened pleading standard, the district court applied the correct and well-settled legal standard. Rule 12(b)(6) provides a motion to dismiss may be granted if the plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In a pair of cases – *Bell Atlantic Corp. v. Twombly* ("*Twombly*"), 550 U.S. 544 (2007) and *Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S. 662 (2009) – the Supreme Court explained: "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see* ER-20:22-25. The factual allegations must "possess enough

18

heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557. At a minimum, a plaintiff must plead a "statement of circumstances, occurrences, and events in support of the claim presented." *Id.* at 555, n.3 (citation omitted).

If a plaintiff's pleading does not bring his "claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Courts making such an analysis must "draw on [their] judicial experience and common sense," but "[w]here the well-pleaded facts do not permit the court to infer "more than the mere possibility of misconduct," the complaint has not sufficiently shown the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

Notably, *Twombly* arose in the context of a putative class action asserting a violation of the Sherman Act much like the case at issue. This Court acknowledged as much when it applied *Twombly* to articulate the specific standard for the sufficiency of pleading antitrust claims in *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042 (9th Cir. 2008). The district court properly relied on and applied *Kendall* to evaluate Fonseca's pleading, but Fonseca inexplicably failed to even cite to *Kendall* in his Opening Brief. To the extent Fonseca implicitly suggests *Kendall* is inapplicable, he is mistaken.

As this Court held in affirming the dismissal of the complaint in *Kendall*, to state a claim under Section 1 of the Sherman Act, a plaintiff must plead "*evidentiary facts* which, if true, will prove: (1) a contract, combination or

conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall*, 518 F.3d at 1047 (citation omitted; emphasis added).[11]

The initial "crucial question" about every claim under Section 1 of the Sherman Act is "whether the challenged anticompetitive conduct stems from independent decision or from an agreement, tacit or express." *Twombly*, 550 U.S. at 553 (citation omitted). At the pleading stage, a court must determine whether the complaint contains "enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 556. Thus, antitrust plaintiffs must identify "facts such as a specific time, place, or person involved in the alleged conspiracies." *Kendall*, 518 F.3d at 1047.

This pleading standard—in which courts "'insist upon some specificity in pleading'"—is critical in antitrust cases given the cost of "'allowing a potentially massive factual controversy to proceed.'" *Twombly*, 550 U.S. at 558 (citations omitted); *see also In re Dynamic Random Access Memory Indirect Purchaser*

---

[11]     The analysis under California's Cartwright Act "mirrors the analysis under federal law because the Cartwright Act was modeled after the Sherman Act." *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) (additional citation omitted). Thus, if a plaintiff has sufficiently pled a Sherman Act claim, he has likewise sufficiently pled a Cartwright Act claim. *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1114 (N.D. Cal. 2012).

*Litig. ("In re DRAM Litig.")*, No. 4:18-CV-2518-JSW-KAW, 2020 WL 8459279, at *5 (N.D. Cal. Nov. 24, 2020) (same); *Kendall*, 518 F.3d at 1047 ("[D]iscovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case.").[12]

A plaintiff may meet this pleading standard by alleging the existence of an agreement to restrain trade through direct evidence, circumstantial evidence, or a combination of the two. *Frost v. LG Elecs. Inc.*, No. 16-CV-05206-BLF, 2018 WL 6256790, at *3 (N.D. Cal. July 9, 2018), *aff'd sub nom Frost v. LG Elecs., Inc.*, 801 F. App'x 496 (9th Cir. 2020).

"Direct evidence factual allegations are 'explicit and require no inferences to establish the existence of a conspiracy.'" *Jones*, 400 F. Supp. 3d at 915 (citation omitted). Direct evidence generally takes the form of an admission by the defendant's representative that the defendant was a conspirator, the testimony of a

---

[12] To the extent Fonseca attempts to argue that *Kendall*'s holding is conditioned on the availability of discovery, he is mistaken. In fact, "the issue of pre-complaint discovery was not substantively considered by the Ninth Circuit on appeal in that case," *Sky Angel U.S., LLC v. Nat'l Cable Satellite Corp.*, 296 F.R.D. 1, 2 n.1 (D.D.C. 2013), and courts have consistently applied *Kendall* to cases at the pleading stage, *see, e.g., Disney Enters., Inc. v. VidAngel, Inc.*, No. 2:16-CV-04109-ABP-LAX, 2017 WL 6883685, at *5 (C.D. Cal. Aug. 10, 2017). And of course, any assertion discovery is necessary to satisfy the applicable pleading standard flies in the face of *Twombly*, which reached its holding in part due to concern about the exorbitant expense of defending against "even anemic" antitrust actions. *Twombly*, 550 U.S. at 559.

witness who observed the agreement, or a document, such as an e-mail, memorializing the agreement. *See Feminist Women's Health Ctr. v. Roberts*, No. C86-161Z, 1989 WL 56017, at \*9 (W.D. Wash. May 5, 1989); *In re DRAM Litig.*, 2020 WL 8459279, at \*5.

In contrast, "[f]actual allegations relying on circumstantial evidence require the court to infer that an impermissible agreement to restrain trade exists." *Jones*, 400 F. Supp. 3d at 915 (citation omitted). A plaintiff may plead circumstantial evidence in the form of parallel conduct by the alleged conspirators **and** "plus factors," that is, "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015) (citing *Twombly*, 550 U.S. at 556 n.4). "The plus factors are meant to suggest 'parallel behavior that would probably not result from chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advance understanding among the parties.'" *In re DRAM Litig.*, 2020 WL 8459279, at \*5 (quoting *Twombly*, 550 U.S. at 556 n.4). But "allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a § 1 violation." *In re Musical Instruments*, 798 F.3d at 1194 (citations omitted); *see also Persian Gulf Inc. v. BP W. Coast Prod. LLC*, No. 3:15-CV-01749-L-BGS,

2016 WL 4574357, at *3 (S.D. Cal. July 14, 2016) (same). Thus, a plaintiff must allege facts "tending to exclude the possibility of independent action." *Twombly*, 550 U.S. at 554 (citations omitted).

> **2.** **The District Court Properly Dismissed Fonseca's Sherman Act And Cartwright Act Claims Because He Failed To Plead Facts Sufficient To Plausibly Establish Appellees Entered An Unlawful "No-Poach Agreement."**

> **a.** **Fonseca's Alleged "Direct Evidence" Is Not Sufficient To Establish The Existence Of A Conspiracy.**

In his Opening Brief, Fonseca claims to rely solely on direct evidence, Appellant's Opening Brief ("AOB") at p. 19,[13] although he argued to the district court that the TAC included sufficient allegations of direct evidence of a conspiracy *and* parallel conduct supported by plus factors, SER-117–125. Here, he claims he "allege[d] the existence and nature of an actual agreement between HP and 3D Systems," and thus asserts "there was no need to plead additional facts to support an inference of agreement." AOB at p. 19.

However, a simple reading of the TAC reveals the district court properly concluded Fonseca failed to allege facts that, if true, would "require no inferences to establish the existence of a conspiracy." *Jones*, 400 F. Supp. 3d at 915 (citation and internal quotation marks omitted). Direct evidence must answer the questions

---

[13]     Appellees' citations to page numbers in Appellant's Opening Brief are to the page numbers imprinted by the Ninth Circuit's Case Management/Electronic Case Filing System ("CM/ECF"), Docket No. 16.

"who is alleged to have conspired with whom, what exactly they agreed to, and how the alleged conspiracy was organized and carried out," *In re Musical Instruments*, 798 F.3d at 1193 n.5, and the TAC does not provide this information.

As an initial matter, the district court correctly disregarded the conclusory assertion that

> HP's executives and 3D System's executives entered into a 'cease-fire', in the form of a[] no-poach agreement – an agreement whereby each of HP and 3D Systems would take necessary measures to refrain form soliciting the hiring of one another's employees through, for example cold calling, and to dissuade their own current employees from applying for work at the other company.

ER 70:25–71:3. This "assertion of an unlawful agreement," is not entitled to the presumption of truth, and was properly disregarded in determining the sufficiency of the TAC, just as the *Twombly* court disregarded the "flat" pleading that "defendants 'ha[d] entered into a contract, combination or conspiracy to prevent competitive entry . . . and ha[d] agreed not to compete with one another.'" *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 551). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not" satisfy a plaintiff's pleading obligation. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

24

The only allegations that could conceivably be considered factual allegations of "direct evidence" of the purported "no-poach agreement" are contained in the latter portion of paragraph 61 of the TAC:

> On information and belief through investigations, this "cease-fire" arrangement was initiated by a phone call made to Joshi by Ron Coughlin, who at the time was an HP executive who had recently had some of his top employees hired-away by Joshi and 3D Systems. Based on witness investigations, Plaintiff is informed and believes that Coughlin called Joshi and told him to stop hiring away HP's employees, and during this phone call and subsequent communications between Joshi, Coughlin and Nigro in 2016, Joshi agreed to comply so long as the arrangement was mutual.

ER-71:2-10.  As the district court observed, merely "[t]elling 3D's Joshi to stop 'hiring away HP's employees' does not evidence a 'no poaching' agreement."  ER-26:1-2.  And the district court correctly concluded Fonseca's allegations that "during this phone call and subsequent communications between Joshi, Coughlin and Nigro in 2016, Joshi agreed to comply so long as the arrangement was mutual" were insufficient to establish a no-poach agreement because "the specifics are wanting and fail to go beyond allegations that are based 'on information and belief.'"  ER-26:2-11.

Notably, even if these allegations are accepted as true (ignoring, for the moment, that they are pled only "on information and belief"), they do not provide direct evidence that HP Inc. and 3D Systems formed an agreement.  First, Fonseca

25

claims the TAC "identifies by name the executives who made the agreement," AOB at pp. 14 and 18, but this is not accurate. While the TAC claims (on information and belief) that Joshi *invited* several HP Inc. employees to enter into an agreement, there is no factual allegation based on direct evidence that anyone at HP Inc. *accepted* this invitation, let alone any allegation identifying such person.

Second, Fonseca claims the TAC "states the substance of the agreement," AOB at p. 14, but the only such statement is in a conclusory assertion that the agreement exists, *see* ER 70:25-71:3. The TAC does not provide any *factual* allegations regarding the substance of any agreement that was *actually* entered. It certainly does not refer to any e-mail, document, or even conversation in which representatives of the two companies agreed to take any action with respect to the solicitation of the others' employees, nor does it allege the named individuals ever even discussed dissuading their own employees from going to work for the other company.

Third, Fonseca claims the TAC "specifies when and how the agreement was made," AOB at pp. 14 and 18, but this is false. In fact, while the TAC vaguely claims the purported agreement was made "in 2016," ER-71:5-11, the TAC *admits* Fonseca does not actually know when the agreement was made, ER-101:9-11. Moreover, there is no allegation regarding how the agreement was made (i.e., at an in-person meeting, over the phone, via e-mail, or in a signed contract).

26

Finally, Fonseca claims the TAC "alleges what actions the companies took in furtherance of the agreement," AOB at p. 14, but such claims are not direct evidence. At most, they might be circumstantial evidence of parallel conduct. And as discussed below, these allegations of parallel conduct are insufficient to establish a plausible claim for conspiracy.

In sum, even if the allegations of direct evidence are accepted as true, they do not establish the existence of a conspiracy without requiring inferences. The Court would have to *infer* that someone with authority at HP Inc. or ES-Perspecta responded to Joshi's purported invitation and *agreed to conspire*. The Court would also have to *infer* the terms of the agreement, as well as the date and manner in which it was entered.

> **i.    The District Court's Conclusion Is Consistent With This Court's Precedent And The Courts In This Circuit.**

As the district court properly acknowledged, this Court and other district courts within this Circuit have found similarly imprecise allegations insufficient to sustain Sherman Act claims. For example, in *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 691 F. App'x 389 (9th Cir. 2017), this Court "held that the plaintiffs failed to meet the *Kendall* standard where plaintiffs' allegations failed to 'explain where and when the alleged collusive activity among the defendants occurred.'" ER-25:20-23 (citing *Bona Fide*, 691 F. App'x at 390); *see also In re*

*Late Fee and Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 962, 965 (N.D. Cal. 2007) (dismissing antitrust claims where the complaint made "several conclusory allegations that the defendants agreed to increase late fees, but it provides no details as to when, where, or by whom this alleged agreement was reached").

Likewise, in *Frost*, the plaintiffs—like Fonseca here—alleged the agreement was made during a certain time period but did not identify the specific date (and acknowledged they did not know when the agreement was made). ER-25:11-13 (citing *Frost*, 2018 WL 6256790, at *4). As the district court noted here, even though the *Frost* plaintiffs "cited statements made by one of the defendant's head of human resources to a newspaper that the two defendants had an understanding that they would not hire from each other without a gap of a year," the *Frost* "court held that the plaintiffs were asking the court to take 'too big a leap' by inferring a conspiracy based on the relative dearth of direct evidence, '[g]iven the seriousness of [p]laintiffs' claims, and the potential impact of the asserted conspiracy on thousands of individuals.'" ER-25:13-20 (citing *Frost*, 2018 WL 6256790, at *5). The district court properly concluded "[l]ike *Frost*, the latest allegations in the TAC asks the Court to take 'too big a leap' by inferring a conspiracy based on the dearth of direct evidence." ER-26:11-13 (citing *Frost*, 2018 WL 6256790, at *5).

The district court also pointed out the allegations fell far short of what has been deemed *sufficient* in other cases concerning purported "no-poach"

agreements. ER-27:21–28:23 (citing *In re High-Tech*, 856 F. Supp. 2d at 1110-12, 1116-17 (alleging details of the formation of six nearly identical no-poach agreements and related communications by specific individuals, taking place at specific places and times); *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1182 (N.D. Cal. 2015) (alleging details of communications between defendants and citing instances in which defendants memorialized their communications and agreements in emails, and identifying individuals)).

Fonseca complains the district court erred in considering these cases because "facts pled in other unrelated cases do not set the bar for a valid pleading under *Twombly*," citing a First Circuit case. AOB at pp. 20-21 (citing *Evergreen Partnering Group, Inc. v. Pactiv Corp.*, 720 F.3d 33 (1st Cir. 2013)). But the district court did not blindly impose an inappropriately high bar. Instead, the district court extensively evaluated the particular allegations of Fonseca's complaint, considered them in light of the controlling authority of *Twombly*, *Iqbal*, and *Kendall*, and found the allegations insufficient. *See*, *e.g.*, ER-27:21–29:5. The fact that the district court compared the allegations of Fonseca's complaint to other cases in which pleadings were found sufficient (*In re High-Tech* and *In re Animation Workers*) and insufficient (*Frost* and *Bona Fide*) does not invalidate its conclusion. ER-25:11–26:13; ER-27:21–29:5. Indeed, such comparisons are an important tool in every court's toolbox. After thoughtful analysis of the TAC, the

29

district court simply—and correctly—concluded the allegations of direct evidence were insufficient to establish the existence of a conspiracy. *See* ER-23:11–29:5.

        **ii.**    **The Allegations Made "On Information And Belief" Are Not Supported By Factual Context That Makes The Conspiracy Plausible.**

Moreover, the district court properly concluded it need not accept as true Fonseca's allegations based "on information and belief" without additional supporting evidentiary facts.[14] Fonseca argues, relying on *Soo Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017) and *Concha v. London*, 62 F.3d 1493 (9th Cir. 1995), that the district court erred because the *Twombly* plausibility standard "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant." AOB at p. 20 (internal quotation marks omitted). But *Concha* was neither an antitrust case, nor a case involving pleadings "on information and belief," and it pre-dated *Twombly*. And *Soo Park* does not stand for the proposition that allegations on information and belief *alone* are sufficient to state a claim for conspiracy based on direct evidence.

---

[14]    As the district court pointed out with respect to the alleged phone call between Joshi and Coughlin, "[t]he TAC fails to identify the reporting witness to [the alleged] call or otherwise demonstrate that he or she exists. Instead, it is based "'on information and belief through investigations,'" ER-26:1-11, which "diluted" the allegations and "cause[d] some concern for the Court," SER-5:18-25.

Instead, in *Soo Park*, this Court found the plaintiff adequately pled her civil conspiracy claim under 42 U.S.C. § 1983 where she identified *both* allegations made on information and belief *and* additional facts that allowed this Court to infer the purported civil conspiracy. *Soo Park*, 851 F.3d at 928. As one court pointed out in applying *Soo Park*, the claim that information is within defendant's possession simply "does not excuse the requirement that the plaintiff allege something more than bare conclusions." *Menzel*, 2018 WL 1400386, at *3. Instead, the plaintiff must substantiate allegations made on information and belief with factual information that makes the inference of culpability plausible. *Soo Park*, 851 F.3d at 928 (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *Menzel*, 2018 WL 1400386, at *2 (same); *see also NorthBay Healthcare Grp., Inc. v. Kaiser Foundation Health Plan, Inc.*, No. 17-cv-05005-LB, 2017 WL 6059299, at *7 (N.D. Cal. Dec. 7, 2017) (rejecting allegations on information and belief in support of conspiracy because "[n]aked assertions made upon information and belief and 'devoid of further factual enhancement are insufficient to state a claim.'") (citations and internal quotation marks omitted).

Importantly, the *Soo Park* plaintiff supported the allegations made "on information and belief" with "specific and numerous" factual allegations. *Menzel*, 2018 WL 1400386, at *2-3 (citing *Soo Park*, 851 F.3d at 928-29). In contrast, Fonseca does not offer any *factual* allegations to support his claims made "on

31

information and belief," or otherwise render the inference of the "no-poach

agreement" plausible, which the district court concluded when it found "the

circumstances surrounding the reported call provide little support for the allegation

that Joshi entered a 'no poaching' agreement with HP."  ER-26:14-16.

The district court explained that because Fonseca alleged only that 3D

"poached" HP Inc.'s executive employees and did not claim that Appellees even

attempted to hire any 3D Systems employees, "Joshi had little, if any, incentive to

enter such an agreement."[15]  ER-26:16-21.  Further, the district court noted

Fonseca alleged that, after the agreement was in place, 3D Systems continued to

hire away HP Inc.'s employees and HP Inc. threatened to take punitive measures

against employees who went to work for 3D Systems.  ER-26:21–27:8.  However,

if in fact a "no-poach agreement" was in place that "restricted 3D Systems from

making job offers to HP employees," "HP would have little motive to deter its

employees from accepting employment with 3D Systems."  ER:26:21–27:6.

Finally, the district court found it "difficult to reconcile Plaintiff's allegations

regarding HP's age-based discrimination with plaintiff's antitrust claims" because

"the age discrimination claims assert that HP was illegally ridding itself of older

---

[15]     As the district court observed during oral argument, "it doesn't look like
there was a war taking place between HP [Inc.] and 3D that required a ceasefire.  It
looks like… the activity complained of was one way, it was stealing HP [Inc.]'s
not just employees but executives. . .and HP [Inc.] was looking to have 3D stand
down."  SER-11:5-14.

employees," while the "antitrust claims imply that HP was illegally preventing 3D Systems from poaching any of its employees – including HP's older-aged employees." ER-27:8-14; *compare* ER-57:12–68:14 and ER-68:15–75:7.

All these circumstances, drawn directly from Fonseca's allegations in the TAC, do the opposite of what was required in *Soo Park* and its progeny. Rather than substantiating the allegations made "on information and belief" by providing "factual information that makes the inference of culpability plausible," *Soo Park*, 851 F.3d at 928 (quoting *Arista Records*, 604 F.3d at 120); *Menzel*, 2018 WL 1400386, at *2, these allegations make the conspiracy *implausible*—they "tend to belie the existence of any no-poach agreement," ER-27:6-8.

Fonseca faults the district court for "disbelieving" the allegations in his complaint, AOB at p. 21, but it was entirely appropriate for the court to consider whether the factual allegations of the complaint made the inference of agreement plausible, particularly in light of the vague claims made "on information and belief." *See Twombly*, 550 U.S. at 557 ("The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'") (alterations in original). To the extent Fonseca suggests the Court need not inquire into the plausibility of his supposed "direct evidence" allegations, he is mistaken. "Whether through direct or

33

circumstantial evidence, the allegations of a conspiracy must be plausible." *In re DRAM Litig.*, 2020 WL 8459279, at *5 (citing *Twombly*, 550 U.S. at 557).

Fonseca also complains the district court erred in rejecting his "plausible version of events" because the court found "a different version more plausible." AOB at pp. 21-22 (citing *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012)). But the district court did no such thing; it simply found Fonseca's version of events *implausible,* explaining: "[a]side from the conclusory allegations, the TAC fails to provide specific facts to demonstrate that the claim is plausible." ER-29:3-5; *see Iqbal*, 556 U.S. at 681-82 (when there is an "obvious alternative explanation," allegations merely consistent with wrongdoing "do not plausibly establish [an improper] purpose"); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (plaintiffs must plead "facts tending to exclude the possibility that the alternative explanation is true . . . in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*") (citation omitted).

Fonseca's factual allegations of direct evidence are insufficient. Because Fonseca's appeal to this Court relies *solely* on his assertion that these allegations were adequate, this Court should affirm the dismissal without further inquiry.

**b. Fonseca Failed To Plead Circumstantial Evidence Of The Alleged "No-Poach Agreement" Through Parallel Conduct.**

Of course, an antitrust plaintiff may attempt to plead circumstantial evidence to establish the existence of an agreement via factual allegations of parallel conduct and "plus factors." As noted above, in his Opening Brief, Fonseca expressly disclaimed this option, choosing instead to rely exclusively on allegations of direct evidence. *See* AOB at p. 19 ("this case does not implicate *Twombly's* ruling that mere allegations of parallel conduct are not enough without additional facts sufficient to infer the existence of an agreement").

Notwithstanding this disclaimer, Fonseca's Opening Brief cites to allegations of circumstantial evidence of parallel conduct to argue he has sufficiently pled the existence of a "no-poach agreement." Specifically, he claims HP Inc. and 3D Systems took actions "in furtherance of the agreement," including that they "stopped cold-calling each other's employees and stopped hiring them through third-party recruiters, and HP managers threatened to (and did) retaliate against HP employees if they applied to 3D Systems." AOB at p. 18; *see also* AOB at pp. 8-9. Fonseca also claims that "[b]ased on their no-poach agreement. . . they began sharing pay scales with one another to assure they would not be in a bidding war to retain top talent." AOB at pp. 8-9 (citing ER-71–73). Curiously, these are the *precise* allegations of "parallel conduct" Fonseca relied on in the

35

court below to support his argument that his allegations of circumstantial evidence were sufficient. ER-30–32; SER-122–125.

Fonseca appears to want this Court to consider his allegations of parallel conduct as evidence of agreement *without* complying with the requirement that he substantiate these claims with "plus factors" that are *inconsistent* with independent conduct by Appellees. But Fonseca cannot have it both ways. The allegations of parallel conduct are not sufficient on their own—or in concert with his inadequate allegations of direct evidence—to plausibly evince the existence of an illegal agreement.

Thus, if this Court does consider Fonseca's allegations of parallel conduct, it should conclude—as did the district court—that Fonseca's "plus factor allegations are either insufficient or independently explained by rational business decisions on the part of HP and therefore do not exclude the possibility that HP's actions were the result of independent conduct." ER-32:5-9 (citing *Kendall*, 518 F.3d at 1049).

First, the district court properly concluded Fonseca's assertion that Appellees and 3D Systems ceased hiring one another's employees was "conclusory and not founded on facts." ER-30:1-6. Indeed, because Fonseca never claimed Appellees ever hired 3D's employees, the conclusory allegation that they stopped doing so does not make sense. *Id.*

36

Second, the assertion that Appellees and 3D Systems shared pay scales to avoid entering a bidding war is similarly conclusory and not entitled to the presumption of truth. ER-30:1-6. Indeed, the claim the companies shared pay scales is unsupported by Fonseca's own allegations, which show the pay scales were publicly available online. ER-30:1-7; ER-71:15–72:6. Moreover, the substance of the allegations regarding compensation simply does not substantiate the existence of a conspiracy. As the district court concluded, because Fonseca alleges he and other members of his printing group at HP Inc. made approximately $50,000 annually while "average salaries" at 3D Systems were $73,007 and $130,265 in San Diego, "it is not plausible that anyone would leave 3D Systems for HP," and thus "HP was not in the position to poach 3D's employees and 3D had no need for a 'no poaching' agreement." ER-30:7-15.

Finally, the district court properly concluded Fonseca's allegations concerning HP Inc.'s engagement with its own employees were more consistent with lawful, independent action than an illegal agreement. ER-32:5-17. Fonseca claims HP Inc.'s employees were required to notify the company if they were offered a position with 3D Systems and would be denied a severance check under the WFR Plan, ER-73:5-14, and that HP Inc. disciplined employees who were found to have interviewed with 3D Systems. ER-73:18–74:6. But the district court acknowledged there are legitimate, independent reasons for HP Inc. to have

37

taken these actions.  ER-31:19–32:9.  Specifically, as the court noted in dismissing the same counts from the SAC, HP Inc.'s alleged actions could easily be explained by HP Inc.'s rational, independent desire to discourage employees from leaving for a competitor and to protect its proprietary information from being disclosed to a competitor.   ER-122:17-21; *see Twombly*, 550 U.S. at 566 ("resisting competition is routine market conduct").

It is well established that an anticompetitive agreement cannot be inferred when allegations "just as easily suggest rational, legal business behavior." *Kendall*, 518 F.3d at 1049 (citing *Twombly*, 550 U.S. at 553-54).  Thus, Fonseca's circumstantial allegations are "insufficient to plead a violation of the antitrust laws." *Id*. (citing *Twombly*, 550 U.S. at 553-57, 557 n.5.).[16]

### 3. The District Properly Dismissed Fonseca's Section 16600 Claim Because He Failed To Plead Facts Supporting The Existence Of The "No-Poach Agreement."

In the proceedings below, Fonseca claimed both the alleged "no-poach agreement" and HP Inc.'s WFR Plan violated Section 16600, which voids certain contracts "by which anyone is restrained from engaging in a lawful profession,

---

[16]    Fonseca should be precluded from arguing to the contrary on reply, since he chose not to present the issue in his Opening Brief.  *See Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 485 (9th Cir. 2010) ("We review only issues [that] are argued specifically and distinctly in a party's opening brief." (quoting *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010)) (internal quotation marks omitted)).

trade, or business." Cal. Bus. & Prof. Code § 16600. The district court found Fonseca failed to state a claim for violation of Section 16600 under either theory. On appeal, Fonseca claims only that the alleged "no-poach agreement" supports his Section 16600 claim, AOB at p. 13 n.1, thus abandoning and waiving any other grounds to appeal the dismissal of that count. *See Christian Legal Soc'y*, 626 F.3d at 485.

Because Fonseca's Section 16600 claim depends on the sufficiency of his allegation of an unlawful agreement, and because Fonseca "failed to sufficiently plead allegations regarding the existence of the no-poach agreement," this Court should affirm the dismissal of the Section 16600 claim. *See* ER-37:8-14.

**B.** **In The Alternative, The District Court Properly Dismissed Fonseca's Claims For Violation Of The Sherman Act, The Cartwright Act, And Section 16600 Because He Did Not Establish Standing.**

Because Fonseca failed to plead sufficient facts to support a plausible inference that Appellees and 3D Systems made a conspiratorial agreement, the district court's decision to dismiss the Sherman Act, Cartwright Act, and Section 16600 claims was well-founded. However, there was a separate, independent justification for the dismissal—Fonseca failed to plead facts to establish his standing to bring these claims. The district court's order may be affirmed on this basis as well.

"Rule 12(b)(1) allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction," including lack of standing. *Richey v. Axon Enters., Inc.*, 437 F. Supp. 3d 835, 841-42 (D. Nev. 2020). "[T]he plaintiff bears the burden of proving that the case is properly in federal court" by a preponderance of the evidence. *Id.* at 841 (citing *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001)) (internal and additional citations omitted).

To allege Article III standing under the United States Constitution, a plaintiff must "clearly allege facts demonstrating" he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted). "For Article III purposes, an antitrust plaintiff establishes injury-in-fact when he 'has suffered an injury which bears a causal connection to the alleged antitrust violation.'" *Gerlinger v. Amazon.com Inc*., 526 F.3d 1253, 1255 (9th Cir. 2008) (citations omitted). In addition, to allege antitrust standing sufficient to bring a claim for violation of the Sherman Act or the Cartwright Act, a plaintiff must plead "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S. 477, 489 (1977).

40

1.    **The District Court Correctly Determined Fonseca Cannot Establish Injury Because He Failed To Plead The Existence Of The Alleged "No-Poach Agreement."**

The district court correctly found Fonseca "cannot show any injury" from the alleged agreement because he "failed to allege sufficient facts to establish [Appellees] and 3D Systems were engaged in a no-poach agreement." ER-36:13-15. Thus, if this Court affirms the district court's finding that Fonseca failed to sufficiently allege the existence of the "no-poach agreement," it should affirm the conclusion that Fonseca lacked standing to bring any of the claims at issue.

2.    **The Sherman Act And Cartwright Act Claims Were Properly Dismissed Because Fonseca's Allegations Are Insufficient To Establish Standing.**

Even if Fonseca had sufficiently pled the existence of the alleged "no-poach agreement," this Court should affirm dismissal of his Sherman Act and Cartwright Act claims because Fonseca failed to plead sufficient facts to establish Article III and antitrust standing. *See Hall*, 476 F.3d at 686 (dismissal may be affirmed on any ground supported by the record). Fonseca argues he sufficiently pled two theories of injury: (1) wage depression; and (2) deterrence from applying to 3D Systems during his employment with HP Inc. AOB at pp. 23, 25. However, neither theory is supported by any *factual* allegations.

41

### a. Fonseca's Allegation Of Wage Depression Is Conclusory And Not Supported By Facts.

Fonseca contends the "no-poach agreement depressed his wages at HP [Inc.] from around August 2016 (when the no-poach agreement took effect) until his termination in May 2017." AOB at p. 23. To support this contention, he claims average salaries at 3D Systems were higher than those paid to Fonseca and other HP Inc. employees prior to the purported no-poach agreement; but after the agreement, HP Inc. was not incentivized to outbid 3D Systems for its own employees' talent, and thus HP Inc. employee salaries were "suppressed." *Id.* (citing ER-71; ER-80:16; ER-79:24-26). However, these allegations are simply conclusory assertions, not provable facts.

To the extent Fonseca's argument is that he would have been paid more money by HP Inc. absent the purported exchange of pay scales, his argument simply does not make sense as, according to his own allegations, "the pay scales were readily available online." ER-30:1-7. Furthermore, to the extent Fonseca's argument is that absent the agreement, 3D Systems' higher salaries would have put upward pressure on *his* salary, the claim is not supported by factual allegations. Fonseca vaguely claims "average salaries at 3D Systems during the relevant time period were $73,007 (payscale.com) and $130,265 in San Diego (paysa.com)" and Fonseca "made approximately $50,000 annually (with additional compensation for overtime worked)." ER-71:19-25. But Fonseca has not identified any facts

regarding how 3D Systems' "average salaries" (as published online by third

parties) were calculated or whether the purported "average" salaries were for work

comparable to Fonseca's position as a "Procurement Ops Associate V" or

commensurate with his qualifications, education, and experience.  *Id.*; ER-56:26–

57:4.  Vitally, Fonseca does not plead facts establishing 3D Systems would have

paid more than HP Inc. for *his* services, nor that 3D Systems actually was hiring

for any role he would have been qualified to fill.  Thus, he has not established that

absent any agreement between HP Inc. and 3D Systems, there would have been

upward pressure on his own salary.

Setting forth an identical argument he made to the district court below,

Fonseca cites *Roman v. Cessna Aircraft Co.*, 55 F.3d 542 (10th Cir. 1995), for the

general proposition that "an employee's allegation that, as a result of his

employer's agreement with competitors not to compete for employees, he did not

receive 'the increase in compensation he would have obtained but for the illegal

agreement . . . is sufficient to allege antitrust standing.'"  AOB at p. 24.[17]  But as

the district court correctly concluded, *Roman* is easily distinguishable.  *See* ER-

35:8-23.

In *Roman*, the plaintiff was employed at Boeing as a contract engineer when

he applied for a position with Cessna "in which he would perform substantially

---

[17]     Fonseca miscites *Roman* as a Ninth Circuit case.  *See* AOB at p. 24.

similar work and receive more compensation." *Roman*, 55 F.3d at 543. The plaintiff was initially told "Cessna needed workers with his experience and that he could expect a firm offer," but was later informed "Cessna would not offer him employment solely because of an agreement between Cessna and Boeing that they would not hire engineers away from each other." *Id.* The Tenth Circuit concluded the plaintiff adequately pled antitrust standing as he had plausibly alleged "he was injured by that agreement because it prevented him from selling his services to the highest bidder." *Id.* at 545.

Here, the district court accurately found *Roman* distinguishable on two grounds: (1) unlike the *Roman* plaintiff, Fonseca failed to adequately allege the existence of a no-poach agreement, and (2) unlike the *Roman* plaintiff, Fonseca only applied for a position at 3D Systems after his termination, i.e., "when he was no longer a member of the particular segment of employee affected by" the purported "no-poach agreement." ER-35:8-23.

*Roman* is further distinguishable because the plaintiff identified the *particularized* injury he allegedly suffered, i.e., "the increase in compensation he would have obtained but for the illegal agreement." *Roman*, 55 F.3d at 545. This claimed injury was supported by plaintiff's allegations that he applied to an open position for which he would "perform substantially similar work and receive more compensation" and was "told . . . he could expect a firm offer." *Id.* at 543. In

44

contrast, of course, Fonseca did not offer any specific facts suggesting 3D Systems was giving any consideration to hiring him, that he could have been paid more at 3D Systems, or that his salary at HP Inc. was reduced by the alleged agreement. *See also Ulrich v. Moody's Corp.*, No. 13-CIV-0008-VSB-MHD, 2014 WL 12776746, at *25 (S.D.N.Y. Mar. 31, 2014), *report and recommendation adopted as modified,* No. 13-CV-00008-VSB, 2014 WL 4977562 (S.D.N.Y. Sept. 30, 2014) (finding plaintiff did not have antitrust standing where complaint lacked "provable facts that [plaintiff] was paid substantially less than other financial writers . . . or that this purported pay disparity was a result of the alleged agreement").

Finally, Fonseca's citation to four district court cases from other circuits does not support his apparent argument that a bare assertion of wage suppression absent sufficient supporting factual context is enough to establish standing. *See* AOB at pp. 24-25. Not only is this authority not binding on this Court, but all four cases involved no-hire agreements among a large number of franchisee-employers or all employers in a specific geographic market that effectively made it impossible for the plaintiffs to obtain employment in a large segment of their industry. This is markedly different from the non-solicitation agreement Fonseca claims exists between only two entities where Fonseca has not pled any facts to establish his own salary would have been higher absent the alleged agreement. *See Turner v. McDonald's USA, LLC*, No. 19-C-5524, 2020 WL 3044086, at *1 (N.D. Ill. Apr.

24, 2020) (no-hire agreement between numerous franchisees); *In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*, No. 3:18-CV-00825-JHM, 2019 WL 5386484, at *1 (W.D. Ky. Oct. 21, 2019) (same); *Butler v. Jimmy John's Franchise, LLC*, 331 F. Supp. 3d 786, 793 (S.D. Ill. 2018) (same); *Hunter v. Booz Allen Hamilton, Inc.*, 418 F. Supp. 3d 214, 219, 22-23 (S.D. Ohio 2019) (no-hire agreement between the only three Defense Intelligence Agency contractor-employers at a single location).

### b. Fonseca's Allegation He Was "Dissuaded" From Applying To 3D Systems Is Speculative.

Fonseca's alternative theory of injury is also insufficient to establish Article III or antitrust standing for his Sherman Act and Cartwright Act claims. Fonseca claims he was "dissuaded from applying to 3D Systems before his termination from HP as a result of the no-poach agreement." AOB at p. 25. This assertion, absent any additional detail regarding when he would have applied or whether there were even any open positions for which he was qualified, is purely "conjectural or hypothetical," and certainly does not articulate the required "concrete and particularized" injury. *Spokeo*, 136 S. Ct. at 1548.

To support his argument, Fonseca cites *Eichorn v. AT & T Corp.*, 248 F.3d 131 (3d Cir. 2001), *as amended* (June 12, 2001), for the proposition that "[s]everal courts . . . have found that no-hire agreements which preclude employees from seeking employment from a third party can give rise to antitrust injury." AOB at p.

25 (quoting *Eichorn*, 248 F.3d at 141-42) (internal quotation marks omitted; emphasis added). However, the Third Circuit's decision depended in part on the allegation that plaintiffs' pension benefits had been cancelled, a specific and particularized injury unlike anything Fonseca has identified. *See Eichorn*, 248 F.3d at 142. Fonseca simply has not adequately pled that he suffered any injury as a result of the purported anticompetitive agreement.

### 3. Fonseca's Section 16600 Claim Was Properly Dismissed Because He Lacks Standing To Recover Declaratory And Injunctive Relief.

Fonseca's lack of standing is not limited to the two antitrust claims. The district court properly dismissed the Section 16600 claim because Fonseca lacks standing to obtain the only relief sought – a "judicial declaration that Defendant's [sic] agreements and conspiracy are void as a matter of law . . . and a permanent injunction enjoining [Defendants] from ever again entering into similar agreements in violation of Section 16600." ER-101:4-8.

A plaintiff who is a former employee when his complaint is filed "lack[s] standing to seek injunctive or declaratory relief because [he] 'would not stand to benefit from' such relief." *Slayman v. FedEx Ground Package Sys.*, *Inc*., 765 F.3d 1033, 1047-48 (9th Cir. 2014) (citations omitted); *Slack v. Int'l Union of Operating Eng'rs*, No. C-13-5001 EMC, 2014 WL 4090383, at *24 (N.D. Cal. Aug. 19, 2014) (same). Here, Fonseca is no longer employed at HP Inc., so he is not

suffering from "suppressed compensation" or "below-market rates." ER-79:19-26; ER-80:21-27. Fonseca is not facing an ongoing denial of employment, because he has not applied to 3D Systems since 2017. ER-74:18–75:7. Thus, prospective relief is inappropriate and this Court should affirm dismissal of Fonseca's Section 16600 claim because the court lacks subject matter jurisdiction pursuant to Rule 12(b)(1).

### C. The District Court Did Not Abuse Its Discretion In Dismissing The Sherman Act, Cartwright Act, And Section 16600 Claims With Prejudice.

Fonseca argues in passing that even if his pleading was defective, he should have been given leave to amend his complaint a *fourth* time. AOB at p. 26. But the district court properly dismissed the claims at issue with prejudice, noting Fonseca had "failed to" adequately plead claims "after three opportunities" and because further leave to amend "would be futile." ER-21:11-17 (citing *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992)) (internal citation omitted); ER-32:15-17. This decision is reviewed for abuse of discretion, and "will not be disturbed absent a definite and firm conviction that [the district court] committed a clear error of judgment." *Abagninin v. AMVAC Chem. Corp*., 545 F.3d 733, 737 (9th Cir. 2008) (citation omitted).

The district court clearly applied the correct legal standard. Although leave to amend is often freely given, a district court may deny leave to amend where a

plaintiff has "repeated[ly] fail[ed] to cure deficiencies by amendments previously allowed," *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)) (internal citation and quotation marks omitted), as amended (Feb. 10, 2009), and where giving leave to amend would be futile.

Here, Fonseca has already had four bites at the apple. His repeated attempts to allege the existence of an illegal agreement have been found lacking on three separate occasions in two different courts. And even now, he cannot identify any additional facts he could plead in good faith to substantiate his claims. Instead, he vaguely asserts only "it is at least possible that [he] could cure any defect by amending the complaint." AOB at p. 26.

"[T]he district court's discretion in denying amendment is 'particularly broad' when it has previously given leave to amend." *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) (citing *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)) (internal citation omitted). The district court did not abuse that discretion here.

**D.      The District Court's Dismissal Of Perspecta Enterprise Solutions Should Be Affirmed Because There Are No Facts Pled Regarding Its Involvement In The Alleged "No-Poach Agreement."**

Even if this Court determines Fonseca plausibly pled the existence of the alleged "no-poach agreement" and established he has standing to assert any of the

three claims at issue, the Court should nonetheless affirm the district court's dismissal of ES-Perspecta. Fonseca does not plead any facts that establish ES-Perspecta played any role in the purported agreement. To survive a motion to dismiss, the complaint "must allege that *each individual defendant* joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision *by each defendant to join it*." *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (internal citations and quotation marks omitted; emphasis added); *see also NorthBay Healthcare Grp.*, 2017 WL 6059299, at *8 ("NorthBay improperly groups the defendants together and does not plead facts from which a conspiracy between the defendants can be inferred.").

As Appellees argued to the district court below, Fonseca never pled ES-Perspecta was a party to the alleged "no-poach agreement," identified its role, or noted any conduct ES-Perspecta engaged in to further the agreement's claimed purpose. SER-161:7-28; SER-96 n.1. Fonseca failed to identify any "executives" from ES-Perspecta who participated in reaching, or even communicated regarding, the purported agreement. Rather, Fonseca's allegations about the "no-poach agreement" are strictly limited to HP Inc. *See* ER-69:19–71:12 (alleging Joshi, Nigro, and Coughlin worked for HP Inc). As Fonseca acknowledges, ES-

Perspecta and HP Inc. are distinct entities. ER-52:3-10.[18] Fonseca's claims that ES-Perspecta and HP Inc. are co-conspirators and alter egos are pure conclusory assertions of law, with no factual support. ER 53:16–55:16-18. Accordingly, this Court should affirm the district court's dismissal of the claims at issue as to ES-Perspecta.

## VIII. CONCLUSION

The district court did not err in dismissing Counts Five, Six, and Eight of Plaintiff-Appellant Bryant Fonseca's Third Amended Complaint with prejudice. For the foregoing reasons, Defendant-Appellees HP Inc. and Perspecta Enterprise Solutions LLC respectfully request this Court affirm the district court's order dismissing each of these counts.

Dated: May 17, 2021                    **WILSON TURNER KOSMO LLP**

By:   s/ *Meryl C. Maneker*
MERYL C. MANEKER
KATHERINE M. MCCRAY
VALERIE PHAN
*Attorneys for Defendants-Appellees*
*HP INC. (formerly known as Hewlett-Packard Company) and PERSPECTA ENTERPRISE SOLUTIONS LLC (formerly known as HP Enterprise Services, LLC)*

---

[18] To the extent Fonseca mentions ES-Perspecta at all, it is in reference to a corporate restructuring in November 2015. ER-53:1-16; ER-68:23–69:3.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the word limitation of Ninth Circuit Rule 32-1(a) because this brief contains 11,823 words, excluding the items exempted by Fed. R. App. P. 32(f).  This brief complies with Fed. R. App. 32(a)(4)-(6) because it is proportionately spaced, has a typeface of 14 points, and is set in a roman style.

Dated: May 17, 2021            **WILSON TURNER KOSMO LLP**

By:    s/ *Meryl C. Maneker*
         MERYL C. MANEKER
         KATHERINE M. MCCRAY
         VALERIE PHAN
         *Attorneys for Defendants-Appellees*
         *HP INC. (formerly known as Hewlett-Packard Company) and PERSPECTA ENTERPRISE SOLUTIONS LLC (formerly known as HP Enterprise Services, LLC)*

## STATEMENT OF RELATED CASES

Counsel for Appellees are not aware of any related cases currently pending in this Court within the definition provided by Fed. R. App. P. 28-2.6.

Dated: May 17, 2021        **WILSON TURNER KOSMO LLP**

By:    s/ *Meryl C. Maneker*
        MERYL C. MANEKER
        KATHERINE M. MCCRAY
        VALERIE PHAN
        *Attorneys for Defendants-Appellees*
        *HP INC. (formerly known as Hewlett-*
        *Packard Company) and PERSPECTA*
        *ENTERPRISE SOLUTIONS LLC (formerly*
        *known as HP Enterprise Services, LLC)*